IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BUSH and                    :    CIVIL ACTION
CHRISTOPHER BUSH                  :
                                  :
        v.                        :
                                  :
S.C. ADAMS, et al.,               :    NO. 07-4936


MEMORANDUM AND ORDER

McLaughlin, J.                              November 3, 2008


        This is a civil rights suit arising from plaintiff

David Bush's arrest for abducting his children from the custody

of his ex-wife.  In 2004, David Bush's ex-wife, Isara Isabella

Serene, took their children from Pennsylvania to Virginia without

court approval and changed their identities in an effort to avoid

being found.  In 2006, David Bush located his children with the

aid of his brother, plaintiff Christopher Bush, a police officer

in Newtown Township, Pennsylvania.  David Bush then obtained a

custody order from a Pennsylvania court – which was later vacated

as improperly granted – and enlisted the aid of Virginia police

to take custody of his children and take them to Pennsylvania.

        Upon learning that her children had been given to her

ex-husband, Serene began legal efforts to have them returned.  As

a result of these efforts, the Virginia police subsequently

issued a warrant for David Bush's arrest for child abduction by a

parent and for conspiracy.  David Bush was arrested in

Pennsylvania and extradited to Virginia where the charges against

him were ultimately dropped.  Christopher Bush was subsequently
investigated by the Pennsylvania State Police for his actions in
seeking to locate the children.

David and Christopher Bush have brought suit under 42
U.S.C. § 1983, as well as state law, seeking damages for David
Bush's arrest and imprisonment and for the Pennsylvania State
Police investigation into Christopher Bush.  They have named as
defendants Isara Isabella Serene;[1] two officers of the Police
Department of the City of Richmond, Virginia, Sergeant Sean Adams
and Lieutenant Brian Russell; and three officers of the
Pennsylvania State Police, Kenneth Hill, Steven J. Ignatz, and
Sergeant Tripp.

This Court previously granted Serene's motion to
dismiss the plaintiffs' complaint for failure to state a claim,
but did so without prejudice.  The plaintiffs filed an amended
complaint, dropping some claims and adding additional factual
allegations.  Serene has again moved to dismiss, as have Officers
Adams and Russell.  All three movants argue that this Court lacks

---

[1]     Serene is named in the caption of the plaintiffs'
complaint as "Sara Nicole Bush a/k/a Serene Isara Isabella a/k/a
Sara Nicole Monserrate a/k/a Sara Nicole Monserrate Bush."  In
this Court's prior Orders, she has been referred to as "Sara
Nicole Bush."  At oral argument, her counsel informed the Court
that Serene has legally changed her name to Isara Isabella
Serene, and the Court will therefore refer to her under that name
in this Memorandum and Order.  5/2/08 Tr. at 32.

personal jurisdiction over them.  Serene also argues that the plaintiffs' amended complaint fails to state a claim.

For the reasons that follow, the Court finds that it lacks personal jurisdiction over Officers Adams and Russell. Based on this finding, the Court has the option to either dismiss the claims against Adams and Russell without prejudice to the plaintiffs' right to refile them in another forum or to sever those claims and order them transferred to a federal court with personal jurisdiction over Adams and Russell, presumably the United States District Court for the Eastern District of Virginia.  Because the parties did not clearly address, either in their briefing or at oral argument, which of these two options they prefer, the Court will order the parties to provide supplemental submissions on the issue.

With respect to defendant Serene, the Court finds that it has personal jurisdiction over her only by virtue of one claim, the state law civil conspiracy claim alleging that Serene conspired with defendant Sergeant Tripp.  The Court believes, however, that this conspiracy cause of action may not state a claim, and if it does not, then the Court will lack personal jurisdiction over the remaining claims against Serene.

The Court does not resolve that issue in this memorandum and order, however, because at least one of the potential grounds for thinking that the conspiracy allegations

3

fail to state a claim is a line of cases that the parties have not addressed.  Accordingly, the Court will request supplemental submissions from the parties before it decides Serene's motion.

I.   FACTUAL BACKGROUND

The pending motions to dismiss raise challenges both to the existence of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and to the sufficiency of the complaint under Rule 12(b)(6).  Each of these challenges involves a different set of relevant facts.

For the movants' challenges to personal jurisdiction, the Court may consider evidence outside the pleadings, including the parties' affidavits.  Ex rel. Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990).  For Serene's challenge to the legal sufficiency of the complaint, however, the Court may not, with a few limited exceptions, consider material beyond the allegations in the complaint.  Angstadt v. Mid-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004).  In setting out the facts relevant to deciding these motions, the Court will therefore discuss separately the allegations of the complaint and the additional evidence submitted on the issue of personal jurisdiction.

A.   <u>The Allegations of the Complaint</u>

1.   <u>Isara Serene divorces David Bush and leaves
     Pennsylvania with the children.</u>

Plaintiff David Bush was married to defendant Isara
Isabella Serene.  They had three children together.  At the time
the children were born, Bush and Serene were domiciled in and
citizens of Pennsylvania.  In 2000, Serene began divorce
proceedings in Pennsylvania against her husband.  In 2004, Serene
left Pennsylvania with her children, without court approval or
notice to David Bush.  Am. Compl. ¶¶ 9-10.

2    <u>Sergeant Tripp refuses to help David Bush find the
     children because of Tripp's agreement with Isara
     Serene.</u>

Sometime after Serene left Pennsylvania, David Bush
contacted defendant Sergeant Tripp of the Pennsylvania State
Police for help in locating his children.  Tripp was instructed
by the District Attorney of "the Mansfield Pennsylvania area" to
search for the children.  One of Tripp's duties was to place the
names of the children into the National Crime Information Center
("NCIC")'s Missing Child database.  Compl. ¶¶ 45, 48, 50.

The complaint alleges Sergeant Tripp refused to help
David Bush and intentionally failed to search for the children or
enter their names into the NCIC database.  It alleges, on
information and belief, that the reason for this failure was that
Trip had entered into an agreement with Isara Serene "to use the

5

under color of state authority [sic] to deprive David Bush of his
association right to be with and raise his children."  The
complaint also alleges on information and belief that Tripp is a
member of "the Mansfield chapter of an organization that hides
women and children, to which organization [Isara Serene] belongs
and/or as does [Serene's] Pennsylvania custody attorney."  Am.
Compl. ¶¶ 45-50.


       3    Christopher Bush enters the children's names into
           the NCIC database.

After Sergeant Tripp failed to help him, David Bush
turned to his brother, Christopher Bush, an officer in the
Newtown Township police department, and Christopher Bush entered
the children's names into the NCIC database.  Am. Compl. ¶¶ 44-
45, 55-56.


       4    David Bush obtains custody, locates the children,
           and retrieves them with the aid of the Virginia
           police.

In June 2006, David Bush was awarded custody of his
children by the Court of Common Pleas of Luzerne County,
Pennsylvania, Family Court Division.  Am. Compl. ¶¶ 11.

In October, 2006, David Bush located his children in
Richmond, Virginia, living under different names and Social
Security numbers.  On October 13, 2006, David Bush obtained a
custody order for his children from the Juvenile & Domestic

Relations Court of the City of Richmond.  Based on that order,
officers from the City of Richmond Police Department retrieved
the children and turned them over to their father.  Two officers
of the City of Richmond Police Department, defendants Adams and
Russell, instructed David Bush to return to Pennsylvania with his
children and he did so.  Am. Compl. ¶¶ 12-13.

> 5    Isara Serene conspires with Virginia police
>      officers Adams and Russell to have David Bush
>      arrested.

On October 14, 2006, Serene spoke with Officers Adams
and Russell.  On information and belief, the complaint alleges
that, at that time, Serene knowingly gave Adams and Russell false
information, telling them falsely that David Bush had physically
and emotionally harmed her and her children and that Bush had no
legal right to custody, having illegally obtained the
Pennsylvania court order he presented to the Richmond police.

The complaint further alleges that Serene entered into
an agreement on October 14, 2006, with Officers Adams and Russell
to have them "aid her in her illegal conduct of leaving the
Commonwealth of Pennsylvania with [the] children" and have them
pursue criminal charges against David Bush based on information
that Serene, Adams, and Russell knew to be false.  Am. Compl. ¶¶
16-17.

On October 21, 2006, the complaint alleges that Serene, Adams, and Russell made another agreement to initiate criminal process against David Bush "for petitioning the Commonwealth of Pennsylvania and Virginia courts to obtain custody of his natural children and to deny him under color of state law his civil rights to associate with and raise his children."  Am. Compl. ¶¶ 18, 20.

6    Virginia police officers Adams and Russell have
     David Bush arrested in Pennsylvania.

On October 23, 2006, Officers Adams and Russell used the allegedly false information provided by Serene to initiate criminal process against David Bush.  On October 24th, Adams and Russell "demanded" that Pennsylvania police in Newtown, Bucks County arrest David Bush and take custody of the children to return them to Serene.  The Pennsylvania police declined to do so, and Adams and Russell then contacted the Bucks County, Pennsylvania, District Attorney's Office.  The District Attorney refused to act on the request unless Adams and Russell "domesticated" their paperwork (a process which the complaint does not define).  On October 24, 2006, Adams and Russell contacted the Federal Bureau of Investigation and the United States Marshals Office in Philadelphia for assistance in having David Bush arrested and the children returned.  Am. Compl. ¶¶ 19, 22-28.

David Bush was arrested on October 26, 2006 for felony charges of child abduction and conspiracy.  Bush was held in the Bucks County Jail and then the Federal Detention Center in Philadelphia for several weeks before being transferred to Virginia.  Am. Compl. ¶¶ 29-33.

7.   <u>Charges are dropped against David Bush.</u>

In November 21, 2006, the complaint alleges, without more detail, that Serene, Adams, and Russell "were put on notice by the Juvenile Court of the Commonwealth of Virginia, City of Richmond that there was 'no case' or insufficient legal or factual basis for the charges" against David Bush and that David Bush had "'done nothing wrong.'"  Am. Compl. ¶¶ 36-37.

On January 5, 2007, a Virginia state court dismissed the charges against David Bush. Am. Compl. ¶ 40.

8     Christopher Bush is investigated by defendant Pennsylvania state troopers Tripp, Ignatz, and Hill for putting the children's names into the <u>NCIC database.</u>

In November 2006, Sergeant Tripp of the Pennsylvania State Police contacted Christopher Bush and questioned him about his relationship with David Bush and about why he had entered the names of the Bush-Serene children into the NCIC database. Christopher Bush responded by asking why Tripp had failed to put the children's names into the database.  Following this contact,

9

Christopher Bush made both a verbal and a written complaint to the Pennsylvania State Police about Tripp's conversation with him and about Tripp's failure to enter the children's names into NCIC.  Am. Compl. ¶¶ 42-45, 51.

After Christopher Bush complained about Tripp, Bush was investigated by the Pennsylvania State Police over his putting the Bush-Serene children's names into the NCIC database.  This investigation was allegedly initiated by Sergeant Tripp and defendant state troopers Kenneth Hill and Steven J. Ignatz.  Christopher Bush alleges that this investigation was "bogus" and that defendants Tripp, Hill, and Ignatz knew Christopher Bush done nothing wrong when they initiated it.  At the end of the investigation, Christopher Bush was cleared of wrongdoing.  Am. Compl. ¶¶ 52-54.

After the investigation had concluded and Christopher Bush had been cleared, Trooper Kenneth Hill sent a letter to Bush's employer, the Newtown Township police department, requesting that the Board of Supervisors take disciplinary action against Bush for improper conduct.  Christopher Bush alleges that Hill's motive for writing the letter was to retaliate against him for his association with his brother David, for his complaint against Sergeant Tripp, and for his lawful actions in entering the Bush-Serene children's names into the NCIC database.  Am. Compl. ¶¶ 55-56.

B.   Additional Evidence on Personal Jurisdiction

        Isara Serene and Officers Adams and Russell have
submitted affidavits and documents in support of their motion to
dismiss for want of personal jurisdiction.


        1   Orders and Opinions in the Legal Proceedings
            Relating to Custody of the Bush-Serene Children

        Officers Adams and Russell have submitted several
orders and opinions from Pennsylvania state courts concerning the
custody dispute between David Bush and Isara Serene.  Although
these documents are submitted in support of Adams and Russell's
motion to dismiss for want of personal jurisdiction, the Court
may also take judicial notice of the existence and judicial
effect of these orders for purposes of resolving Isara Serene's
motion to dismiss for failure to state a claim.  See So. Cross
Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181
F.3d 410, 426-27 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a
court may properly look at public records, including judicial
proceedings, in addition to the allegations of the complaint.
. . . [A court] may take judicial notice of another court's
opinion — not for the truth of the facts recited therein, but for
the existence of the opinion, which is not subject to reasonable
dispute over its authenticity.")

        The Court of Common Pleas of Tioga County,
Pennsylvania, issued a Protection from Abuse Order against David

11

Bush on July 6, 2004.  In addition to protective provisions that forbade David Bush from contact with Isara Serene, her relatives, and the children, the order also awarded primary physical custody of the children to Isara Serene and gave David Bush no partial custody or visitation rights.  The order provided that its provisions would expire on January 6, 2006.  Adams-Russell Br., Ex. 1.

In an opinion issued on August 31, 2005, the Tioga County Court of Common Pleas set out its reasoning for an earlier May 18, 2005, order (not provided by the parties) from which David Bush had appealed.  According to the August 2005 opinion, the May 2005 order had refused to permit David Bush to serve Isara Serene with a petition to modify custody because the court found that permitting service would allow Bush to learn Serene's whereabouts.  Adams-Russell Br., Ex. 2.

On March 17, 2006, the Tioga County court issued a supplemental opinion to respond to the appellate court's request for "an update on events that have transpired since the expiration of the Protection from Abuse Order on January 6, 2006."  The supplemental opinion states that, on the day the Protection from Abuse order expired, David Bush filed a complaint for partial custody and visitation.  As of the date of the opinion, the court states that Bush has been unable to serve Isara Serene with the complaint and that Serene did not appear

12

for a case conference in February 2006 or for a hearing in early March 2006.  Adams-Russell Br., Ex. 3.

In May 2006, David Bush filed a petition for custody of the children in Luzerne County, Pennsylvania.  On June 23, 2006, the Court of Common Pleas of Luzerne County issued an order granting David Bush primary physical and legal custody of the children.  The order states that "if their location can be discovered the father shall take physical custody of the minor children with the assistance of any law enforcement agency and return the minor children to Pennsylvania for hearing on the issue of primary physical custody."  Adams-Russell Br., Ex. 3, Ex. 7.

On October 23, 2006, the Luzerne County Court of Common Pleas issued an order vacating its earlier order granting custody to David Bush.  The October 23 order states that the prior order was "inappropriately granted" because David Bush's petition for custody failed to contain a basis for jurisdiction in Luzerne County.  The court stated that neither Bush nor Serene were residents of Luzerne County and that, at the time the original petition was filed, there was an ongoing custody proceeding in Tioga County "which was not disclosed to the Court."  The Luzerne court also stated that there was no proof of service of the original petition upon Isara Serene.  Adams-Russell Br., Ex. 10.

13

On October 25, 2006, the Juvenile & Domestic Relations
Court of the City of Richmond, Virginia issued orders granting
Isara Serene temporary sole legal and physical custody of her
children and ordering David Bush to have no further contact with
the children or Serene.   The orders indicate on their face that
they were issued ex parte, and they set a date for a final
hearing on the custody matter for November 15, 2006.   Adams-
Russell Br., Ex. 11.   At oral argument on this matter, the
parties indicated that custody proceedings in Virginia were still
ongoing.   5/2/08 Tr. at 30-31.

> 2   Jurisdictional Facts Concerning Officers Adams and
> Russell

Both Officers Adams and Russell have submitted
affidavits concerning their contacts with Pennsylvania in support
of their motions to dismiss.

According to Officer Adams' affidavit, Officer Adams
received a telephone call from Christopher Bush on October 11,
2006, in which Bush identified himself as a police officer from
Newtown Township, Pennsylvania, and told Officer Adams that "a
father of three [missing] children" would be coming from
Pennsylvania to Richmond to retrieve his children.   Officer Adams
avers that he referred the matter to Officer Joel Lawson, another
officer in the Richmond Police Department.   On information and
belief, Officer Adams states that Officer Lawson assisted David

14

Bush in obtaining physical custody of his children on October 13, 2006, after Bush provided Officer Lawson with a copy of the order from the Luzerne County Court of Common Pleas granting him custody. Adams Aff. at ¶¶ 4-7, attached to Adams-Russell Br. at Ex. 5.[2]

Both Adams and Russell's affidavits state that Isara Serene approached them in Virginia on October 25, 2006, seeking their assistance in retrieving her children from David Bush. Serene presented the officers with a copy of the October 23, 2006, Order of the Luzerne County Court of Common Pleas, vacating its prior order that had awarded custody of the Bush-Serene children to David Bush. Serene also presented the officers with an order from the Juvenile & Domestic Relations Court of the City of Richmond which granted her exclusive custody of the children and which forbade David Bush from having any contact with Serene or the children. Adams Aff. at ¶ 9; Russell Aff. at ¶ 5, attached to Adams-Russell Br. at Ex. 6.

---

[2]    Officers Adams and Russell have also provided the Court with a copy of Officer Lawson's notes concerning the actions he took with respect to the Bush-Serene children. Adams-Russell Br., Ex. 9. These notes are undated and unsworn, but from context appear to have been written on or about October 24, 2006. (The last paragraph of the notes reports on events "as of 1400 hours on 10/24/06 . . ."). Most of the incidents reported in the notes concern Officer Lawson's contacts with David Bush and Isara Serene and so are of little relevance to Officers Adams and Russell's jurisdictional contacts with Pennsylvania.

Officer Russell avers that he then telephoned the police department of Newtown Township, Pennsylvania, to request its assistance "in procuring the return of the Bush children without arresting David Bush," but the Newtown Township police "refused to provide assistance."  After this refusal, Officer Adams obtained from the local magistrate of the Richmond Juvenile & Domestic Relations Court six arrest warrants for David Bush on felony charges of parental abduction and conspiracy to commit parental abduction.  Adams Aff. at ¶ 10; Russell Aff. at ¶¶ 6-7.

Based on these warrants, Officer Russell then placed the names of the Bush-Serene children in the NCIC database.  Officer Russell also sent a teletype to the Sheriff's Department of Bucks County, Pennsylvania, requesting its assistance in obtaining the children's return.  After he received no response from the Bucks County Sheriff, Officer Russell next called the Pennsylvania State Police to request their assistance, but they declined to help.  Officer Russell then called the Richmond field office of the Federal Bureau of Investigation for assistance, but they did not act immediately.  Russell Aff. at ¶¶ 8-10.

Officer Russell next contacted two Richmond police officers who had been assigned to the United States Marshall Service's Fugitive Taskforce to request their assistance in arresting David Bush.  This conversation occurred in Virginia.  On information and belief, Officer Russell believes these officers

16

arranged for David Bush's arrest in Pennsylvania.  Russell Aff. at ¶¶ 11-12.

Neither Officer Russell nor Officer Adams participated in David Bush's arrest or entered Pennsylvania during the events at issue.  Officer Adams never initiated any contact with any individuals in Pennsylvania concerning the Bush-Serene custody dispute or the arrest warrants for David Bush.  Adams Aff. at ¶¶ 11-14; Russell Aff. at ¶¶ 13-15.

### 3   Jurisdictional Facts Concerning Isara Serene

Isara Serene has submitted an affidavit in support of her motion to dismiss for want of personal jurisdiction.  In it, Serene states that she lived in Tioga County, Pennsylvania, until 2004, when she "fled the jurisdiction" and has "intentionally not maintained any continuous or systematic contacts with the Commonwealth of Pennsylvania."  Serene states that she has lived in Richmond, Virginia, for the past three years.  Serene Aff. at ¶¶ 2-3, 5-6, attached as Ex. A to Serene Br.

Serene avers that the only contacts she has had with Pennsylvania since leaving the jurisdiction in 2004 are her communications with her attorneys at Deem, Farney, & Lopez in Lancaster County, Pennsylvania, and her filing of an Emergency Petition for Special Relief in Luzerne County Court of Common

Pleas to successfully vacate that court's order granting custody
of her children to David Bush.  Serene Aff. ¶¶ 6-7, 11.

Through counsel at oral argument, Serene has conceded
that, after her children were returned to David Bush, she made
phone calls into Pennsylvania to determine whether Bush had been
awarded custody of her children.  Through counsel, Serene has also
stated that she physically traveled to Pennsylvania in October
2006 to successfully petition the Luzerne County Court of Common
Pleas to vacate its custody order.  5/2/08 Tr. at 35-36.  At oral
argument, David Bush's counsel noted that Serene's presence in
Pennsylvania at this time was also mentioned in the notes of
Officer Lawson, which state that on October 24, 2006, Lawson and
Officers Russell and Adams telephoned Isara Serene "who at the
time was in Pennsylvania and on another phone with the FBI."
5/2/08 Tr. at 16, 47 (citing Adams-Russell Br., Ex. 9).

Plaintiff David Bush has also submitted an affidavit in
support of his opposition to the defendants' motions.  The
affidavit states that Serene has appeared in Pennsylvania for
legal proceedings, including "every hearing, except for the
hearings schedule[d] on [the] custody matter."  The affidavit,
however, does not specify how many such hearings occurred and
states that, since Serene left Pennsylvania in 2004, her
appearances have been through counsel.  Bush's affidavit states
that Serene litigated in the Pennsylvania Superior Court in 2005

18

and 2006, presumably in opposition to Bush's appeal of the Tioga County Court of Common Pleas award of custody to Serene, and in the Luzerne County Court of Common Pleas in 2006 to vacate that court's custody order.  Bush Aff. at ¶¶ 4-5, attached as Ex. 1 to Pl. Br.

David Bush also states that since 2004 Serene has maintained a post office box in Mainesburg, Pennsylvania, and has received payments in Pennsylvania from David Bush.  Bush Aff. at ¶ 5.

Bush also points in his affidavit to a statement in the notes made by Officer Lawson of the Richmond Police Department, attached by Officers Adams and Russell to their motion.  In the notes, Lawson states that defendant Sergeant Tripp of the Pennsylvania State Police called on October 24, 2006, and told Lawson that he had been involved in the case of the Bush family for some time; that he would fax Lawson a copy of the custody order; and that Isara Serene wanted to have her ex-husband arrested but there is no probable cause for doing so.  In his affidavit, Bush contends that this statement shows that Serene had contacted Sergeant Tripp in Pennsylvania and sought to have David Bush arrested.  Bush Aff. at ¶¶ 10, 13-15, citing Adams-Russell Br., Ex. 9.

II.  <u>ANALYSIS</u>

          Both Serene and Officers Adams and Russell have moved to dismiss for lack of personal jurisdiction.  Serene has also moved to dismiss for failure to state a claim.  The Court will first address the defendants' jurisdictional arguments.

     A.   <u>Personal Jurisdiction Over Adams, Russell, and Serene</u>

          Once a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists over the moving defendant.  <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 316 (3d Cir. 2007).  When, as here, the court has not held an evidentiary hearing, then the plaintiff need only establish a prima facie case of personal jurisdiction, and the plaintiff is entitled to have the allegations in its complaint taken as true and all factual disputes drawn in its favor.  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004); <u>see also</u> 4 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1067.6 (2008) ("If the contents of the plaintiff's complaint conflicts with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor.").  To establish a prima facie case, a plaintiff must demonstrate, with reasonable particularity, a

20

sufficient nexus between the defendant and the forum state to support personal jurisdiction.  _Miller Yacht_, 384 F.3d at 97.

Unless otherwise authorized by law, a federal court sitting in Pennsylvania has jurisdiction over parties to the extent permitted by Pennsylvania law.  _Kehm Oil Co. v. Texaco, Inc._, 537 F.3d 290, (3d Cir. 2008); Fed. R. Civ. P. 4(e). Analyzing whether personal jurisdiction exists is therefore a two-step inquiry.  A court must first look to see if the exercise of personal jurisdiction is authorized by the applicable state law; if it is, a court must then consider whether exercising jurisdiction comports with the due process requirements of the United States Constitution.  _See_ _Pennzoil Prod. Co. v. Colelli & Assocs., Inc._, 149 F.3d 197, 200 (3d Cir. 1998); _see also_ _Budget Blinds, Inc. v. White_, 536 F.3d 244, 260 (3d Cir. 2008).  In some instances, the applicable state law may provide for the exercise of jurisdiction up to the limits of constitutional due process. In such cases, the two steps of statutory and constitutional analysis will collapse into one.  _See, e.g._, _Pennzoil_, 149 F.3d at 200; _Miller Yacht_, 384 F.3d at 96.

Courts have conceived of personal jurisdiction as comprising two categories:  general jurisdiction and specific jurisdiction.  _Kehm Oil_, 537 F.3d at 300; _O'Connor_, 496 F.3d at 317.  General jurisdiction exists when the totality of contacts between a defendant and a judicial forum is sufficient to permit

the forum to exercise jurisdiction over the defendant regardless of the specific facts of the controversy at issue.  For due process purposes, the central inquiry for general jurisdiction is whether a defendant has maintained systematic and continuous contacts with the forum state.  Kehm Oil, 537 F.3d at 300 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n. 9 (1984)).  Specific jurisdiction exists when the claim at issue "arises from or relates to conduct purposely directed at the forum state."  Id.  For due process purposes, the central inquiry for specific jurisdiction is whether the defendant purposefully directed his activities at the forum, whether the plaintiff's claim arises out of or relates to those activities, and whether the assertion of jurisdiction comports with fair play and substantial justice.  O'Connor, 496 F.3d at 317.

> 1    General Jurisdiction over Adams, Russell, and
>      Serene

The plaintiffs contend that they have presented sufficient allegations to establish general jurisdiction over defendants Adams, Russell, and Serene, arguing that all three defendants have "continuous and systematic" contacts with Pennsylvania.  The moving defendants contend vigorously that they lack such contacts.

The parties' arguments, however, are misplaced.  In contesting whether "continuous and systematic" contacts exist, the

22

parties have rushed to address the constitutional test for general jurisdiction without first analyzing whether general jurisdiction here is authorized by state statute.

The Pennsylvania statute governing general jurisdiction provides that such jurisdiction exists over individuals only in three circumstances:  "(i) Presence in this Commonwealth at the time when process is served; (ii) Domicile in this Commonwealth at the time when process is served; (iii) Consent, to the extent authorized by the consent."  42 Pa. C.S.A. § 5301(a)(1).  By limiting general jurisdiction over individuals in this manner, Pennsylvania has chosen not to exercise its jurisdiction to the extent permitted by constitutional due process.[3]

None of these three statutory bases for the exercise of general jurisdiction applies to Adams, Russell, or Serene.  The plaintiffs have not argued that any of these three defendants was present in Pennsylvania when served with process or the defendants have consented to jurisdiction in Pennsylvania.  The plaintiffs have specifically pled in their complaint, on information and belief, that the domicile of all three defendants is the Commonwealth of Virginia, and all three defendants have averred in

---

[3]    In contrast, the same statute provides that general jurisdiction over corporations, partnerships and similar entities will exist when such entities carry on a "continuous and systematic part" of their business in Pennsylvania, making the statute's exercise of general jurisdiction over such entities coextensive with the limits of due process.  42 Pa. C.S.A. §§ 5301(a)(2)(iii), (a)(3)(iii).

their affidavits that they are Virginia residents.  Am. Compl. ¶¶
5, 7; Adams Aff. ¶ 3; Russell Aff. ¶ 3; Serene Aff. ¶ 2.[4]

        As the plaintiffs have failed to establish a prima facie
case that any of the three statutory bases for general
jurisdiction exists with respect to the moving defendants, there
is no need for the Court to consider whether the defendants have
sufficient "continuous and systematic" contacts with Pennsylvania
for the exercise of jurisdiction to comport with due process.
There is no general jurisdiction here over any of the movants.


                2    Specific Jurisdiction over Adams, Russell, and
                     Serene

        The statutory basis for the exercise of specific
jurisdiction in this case is set out in Pennsylvania's long arm
statute, 42 Pa. C.S.A. § 5322.  That statute authorizes personal
jurisdiction over persons outside of Pennsylvania "to the fullest
extent allowed under the Constitution of the United States" and
"based on the most minimum contact" with Pennsylvania allowed
under the Constitution.  § 5322(b); Kehm Oil, 537 F.3d at 299-300.
Because the statute's reach is coextensive with constitutional due
process limits, "a district court's exercise of personal
jurisdiction pursuant to Pennsylvania's long-arm statute is
therefore valid as long as it is constitutional" and the court's
inquiry is solely whether the exercise of personal jurisdiction

---

[4]

over the defendant complies with due process.  <u>Pennzoil</u>, 149 F.3d
at 200 (citing <u>Renner v. Lanard Toys Ltd.</u>, 33 F.3d 277, 279 (3d
Cir. 1994)).

        a.    <u>Constitutional Limits on Specific Jurisdiction</u>

        Determining whether the exercise of specific
jurisdiction complies with constitutional due process is usually a
three-part inquiry.  <u>O'Connor</u>, 496 F.3d at 317.  This inquiry is
made on a claim-by-claim basis.  <u>Marten v. Godwin</u>, 499 F.3d 290,
296 (3d Cir. 2001).

        First, the defendant must have purposely availed itself
of the privilege of conducting activities in the forum.  <u>O'Connor</u>,
496 F.3d at 317 (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253
(1958)).  This requires that a defendant purposefully direct its
activities at the forum, such that it could be said to have
"deliberately target[ed]" it.  <u>O'Connor</u>, 496 F.3d at 317; <u>see also</u>
<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985).  This
requirement cannot be satisfied by the "unilateral activity" of
someone other than the defendant.  <u>World-wide Volkswagen Corp. v.</u>
<u>Woodson</u>, 444 U.S. 286, 298 (1980) (citing <u>Hanson</u>, 357 U.S. at
253).

        Second, the litigation must "'arise out of or relate
to'" at least one of the activities that the defendant
purposefully directed at the forum.  <u>O'Connor</u>, 496 F.3d at 317

(quoting <u>Helicopteros</u>, 466 U.S. at 414).  This cannot be
determined simply by looking at whether the defendant's activity
is a "but-for" cause of the plaintiff's alleged injury.  Instead,
a court must determine relatedness on a case-by-case basis
focusing on "the notion of a tacit quid pro quo that makes
litigation in the forum reasonably foreseeable."  <u>Id.</u>, 496 F.3d at
322.  In return for making a purposeful contact with a forum, a
non-resident tacitly becomes subject to the forum's laws.  The
purpose of the relatedness requirement is "to keep the
jurisdictional exposure that results from a contact closely
tailored to that contact's accompanying substantive obligations."
<u>Id.</u>, 496 F.3d at 323.  This requires a causal connection that is
"closer and more direct" than "but for" causation, but which can
be "somewhat looser than the tort concept of proximate causation."
<u>Id.</u>  It must be "intimate enough to keep the quid pro quo
proportional and personal jurisdiction reasonably foreseeable."
<u>Id.</u>

        The third requirement for specific jurisdiction is that
the exercise of jurisdiction must comport with fair play and
substantial justice.  With respect to this requirement, the burden
is on the defendant to show that, even though minimal contacts
with the forum exist, there are other compelling considerations
that render the exercise of jurisdiction unreasonable.  <u>O'Connor</u>,
496 F.3d at 324.

In addition to the traditional three-part inquiry into specific jurisdiction, in limited circumstances the federal courts have used an alternative analysis that looks to the effects that a defendant's conduct has upon the plaintiff.  See Calder v. Jones, 465 U.S. 783 (1984).  Under the Calder effects test, a plaintiff can establish personal jurisdiction by demonstrating that:  1) the defendant committed an intentional tort;  2) the plaintiff felt the brunt of the harm from the tort in the forum so that the form could be said to be the "focal point" of the plaintiff's harm; and 3) the defendant "expressly aimed" his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity and knew that the plaintiff would suffer the brunt of the harm caused by his tortious conduct in the forum. IMO Indus. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998); see also Marten, 499 F.3d at 297.

> b.   Specific Jurisdiction over Adams and Russell
>
> (1)   The Three-Part Test

Applying the three-part inquiry for specific jurisdiction to Officers Adams and Russell shows that both officers fail the first requirement for specific jurisdiction, that they purposefully availed themselves of the privilege of conducting activity in Pennsylvania.

It is not disputed that Officers Adams and Russell did not physically enter Pennsylvania during the events at issue in this suit.  Officers Adams and Russell were contacted by Isara Serene at their police station in Richmond, Virginia, and acting on her information, obtained arrest warrants for David Bush from a Virginia court on Virginia state charges.  A defendant's physical presence in a forum, however, is not necessary to establish the minimum contacts necessary for personal jurisdiction.  O'Connor, 496 F.3d at 317.

The plaintiffs argue that Officers Adams and Russell subjected themselves to Pennsylvania jurisdiction when they obtained arrest warrants for David Bush knowing that Bush had returned to Pennsylvania and that the warrants would necessarily have to be served in that forum, and when the officers made telephone calls into Pennsylvania seeking the assistance of Pennsylvania law enforcement to arrest David Bush.[5]  They argue

---

[5]     Although the plaintiffs' complaint refers to both Officers Adams and Russell obtaining warrants and making calls into Pennsylvania, the officers' affidavits clarify that Officer Adams obtained the warrants for David Bush's arrest and that Officer Russell made the calls into Pennsylvania.  Because the plaintiffs' complaint alleges that both officers conspired together to obtain the warrants and have them acted upon in Pennsylvania, and because the Court concludes that these contacts with Pennsylvania are not sufficient for jurisdiction, the Court will not differentiate between the contacts made by Officer Adams and Officer Russell.  In doing so, however, the Court is not making any findings as to whether the plaintiffs' alleged conspiracy exists or is adequately plead or whether the plaintiffs' have satisfied the requirements of co-conspirator jurisdiction. C.f. Mass. Sch. of Law at Andover, Inc. v. Am. Bar

that these contacts, particularly the phone calls into the forum, constitute the officers' deliberate targeting of David Bush in Pennsylvania.

The Court finds that these contacts are not enough to establish personal jurisdiction.  Merely obtaining an arrest warrant for someone who is known to be in another state is not sufficient to subject the officer obtaining the warrant to personal jurisdiction in that state.  Although it is foreseeable that the warrant will be executed in the suspect's state of residence, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." World-wide Volkswagen, 444 U.S. at 295.  The critical inquiry is whether the defendant's conduct and connection with the forum state are such that he "should reasonably anticipate being haled into court there." Id. at 297.  A Virginia law enforcement officer could not reasonably anticipate that preparing an arrest warrant in Virginia on Virginia charges would subject him to jurisdiction in another state.

The fact that the officers made phone calls into Pennsylvania seeking to have their arrest warrants acted upon does not alter this conclusion.  Officers Adams and Russell could expect that the warrants would be acted upon in ordinary course by

---

Ass'n, 846 F. Supp. 374, 379 (1994) (discussing the requirements for the jurisdictional contacts of one defendant to be attributed to a co-conspirator).

Pennsylvania law enforcement authorities and that David Bush would be arrested.  The officers' telephone calls to Pennsylvania law enforcement sought only to expedite the warrants' already-intended and expected result of having David Bush arrested in Pennsylvania. As such, the calls do not establish that Officers Adams and Russell purposely availed themselves of any privilege of acting in Pennsylvania, beyond the privilege of having their arrest warrants honored.  This is not enough for the officers to have reasonably anticipated being haled into a Pennsylvania court.

This is particularly true because Officers Adams and Russell's connection with Pennsylvania arises solely from David Bush's decision to return to that state.  The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Burger King, 471 U.S. at 474 (citing Hanson, 357 U.S. at 253). Here, after committing actions in Virginia that persuaded a Virginia magistrate to issue arrest warrants, David Bush returned to his home state of Pennsylvania.  Officers Adams and Russell's attempts to have those warrants executed on Bush in Pennsylvania were therefore not a reflection of the officers' purposeful decision to direct activity to that forum, but of David Bush's decision to return there.  Because the officers' contacts with Pennsylvania were determined by David Bush's choices, they do not

reflect the deliberate and purposeful targeting of the forum necessary for personal jurisdiction.

(2)   The Calder Effects Test

The plaintiffs also argue that personal jurisdiction over Officers Adams and Russell can be established under the Calder effects test.  The Court finds that the plaintiffs have failed to establish the elements of the Calder test.

The first element of the Calder test is that the defendants be accused of committing an intentional tort.  Here, the plaintiffs allege that Officers Adams and Russell intentionally caused David Bush to be falsely arrested and maliciously prosecuted in violation of 42 U.S.C. § 1983 and state tort law, and further allege that Bush's arrest was in retaliation for his exercise of his first amendment rights.  The plaintiffs have therefore satisfied this first element.  See Marten, 499 F.3d 290 (applying the Calder effects test to a § 1983 claim for first amendment retaliation).

The second element, however, does not appear to be met here.  Although David Bush was arrested in Pennsylvania, the purpose of that arrest was to bring him to Virginia to be tried in the Virginia courts.  It is not clear, therefore, that Bush "felt the brunt" of the harm from Officer Adams and Russell's alleged tortious actions in Pennsylvania, rather than Virginia.  Although

31

Bush was held for several weeks in facilities in Pennsylvania, he was eventually transferred to Virginia and held there before charges were dropped.  The focal point of Bush's harm would therefore appear to be Virginia.

The plaintiffs have also failed to establish the third element of the <u>Calder</u> test.  That element requires the plaintiffs to show that Officer Adams and Russell expressly aimed their tortious activity at Pennsylvania and that they knew that Bush would suffer the brunt of the harm caused by their conduct in that state.  Merely knowing that Bush would be in Pennsylvania when he would be arrested is not enough.  <u>See</u> <u>Marten</u>, 499 F.3d at 298.

In <u>Marten</u>, a plaintiff located in Pennsylvania was enrolled in a web-based degree program from a Kansas state university.  After the <u>Martin</u> plaintiff was expelled for alleged academic misconduct, he brought a § 1983 suit in Pennsylvania alleging that he had been retaliated against for exercising his first amendment rights.  The plaintiff contended that the Pennsylvania court had personal jurisdiction over the Kansas defendants under the <u>Calder</u> effects test because the plaintiff suffered the harm of expulsion in Pennsylvania.  On appeal, the <u>Marten</u> court held that this was insufficient to satisfy <u>Calder</u> because there was no evidence that the defendants expressly aimed their conduct at the plaintiff's location, even though the defendants knew that the plaintiff was residing in Pennsylvania

when they expelled him and had sent the letter informing the plaintiff of his expulsion to his Pennsylvania residence.  Id., 499 F.3d at 294, 298-99.  Absent evidence of "specific activity indicating the defendants 'expressly aimed' their conduct at Pennsylvania, the District Court did not have jurisdiction."  Id. at 299 (quoting IMO Indus., 155 F.3d at 256).

Applying the reasoning of Marten, the plaintiffs here have not established that Officers Adams and Russell purposefully aimed their activities at Pennsylvania.  Although the officers knew that David Bush was in Pennsylvania when they obtained arrest warrants, and although they telephoned Pennsylvania law enforcement seeking to have those warrants executed, this does not establish that the officers deliberately aimed their conduct at Pennsylvania.

In addition, the third element of the Calder test also requires Officers Adams and Russell to have known that David Bush would suffer the "brunt" of the harm from their actions in Pennsylvania.  Given that the purpose of the officers' seeking to have David Bush arrested was to have him brought to Virginia to face Virginia charges, the plaintiffs cannot establish that the officers knew that the brunt of the harm that Bush would suffer from the arrest would take place in Pennsylvania.

33

c.   <u>Specific Jurisdiction over Isara Serene</u>

The plaintiffs' claims against Isara Serene are broader than those against Officers Adams and Russell.  Because the determination of personal jurisdiction must be done claim by claim, the additional allegations against Serene require a separate analysis.

To the extent that the plaintiffs are arguing that Serene is subject to jurisdiction in Pennsylvania because Adams and Russell acted as her agents and co-conspirators in seeking to have David Bush arrested, then this argument fails for the reasons discussed above:  Adams and Russell's contacts with Pennsylvania are insufficient to establish personal jurisdiction over them and therefore, even if they are imputed to Serene, they cannot establish personal jurisdiction over her.  Similarly, to the extent that the plaintiffs argue that Serene should be subject to jurisdiction in Pennsylvania because she made calls into the jurisdiction seeking to have her children returned and David Bush arrested, then these arguments fall short because, as discussed with respect to Adams and Russell, such calls are insufficient to show that Serene purposefully availed herself of the privilege of acting in Pennsylvania.[6]

_____

[6]   Serene's calls into Pennsylvania are also insufficient to establish personal jurisdiction because there is no evidence in the record that these calls were acted upon.  Both the plaintiffs' complaint and the parties' affidavits indicate that David Bush was arrested after Officers Adams and Russell

Serene, however, has additional contacts with Pennsylvania that Adams and Russell do not.  Serene participated in divorce and custody proceedings in Tioga County, in person until she fled Pennsylvania in 2004 and through counsel afterward. Serene also physically entered Pennsylvania in October 2006, after David Bush retrieved her children from Virginia, to petition the Court of Common Pleas of Luzerne County to vacate its custody order.  These contacts are sufficiently extensive to show that Serene purposefully availed herself of the privilege of acting in Pennsylvania, thereby satisfying the first element of the traditional test for specific jurisdiction.

These contacts with Pennsylvania, however, are not sufficiently related to the plaintiffs' claims in this litigation to satisfy the second element for jurisdiction.  In order for Serene's involvement with Pennsylvania custody proceedings to give rise to specific jurisdiction, the plaintiffs' claims must "arise out of or relate to" those contacts.  This requires that the contacts be not only a "but for" cause of the plaintiff's claims, but that the contacts give rise to substantive obligations that warrant the exercise of jurisdiction.  O'Connor, 496 F.3d at 323.

---

contacted Virginia police assigned to the United States Marshals Service.  Because Serene's calls are not a "but for" cause of David Bush's arrest, the calls are not sufficiently related to the plaintiffs' claims to support personal jurisdiction.  See O'Connor, 496 F.3d at 323 ("specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test").

Both Serene's involvement in the original custody proceeding in Tioga County and her intervention to vacate the improperly granted custody order in Luzerne County are "but for" causes for David Bush's eventual arrest.  Had Serene not divorced David Bush and not sought and been awarded custody, or had she not intervened to vacate the Luzerne County order, then David Bush would have had legal custody of the Bush-Serene children and could not have been arrested for abducting them.  This "but for" connection to David Bush's arrest, however, is remote and attenuated and cannot support jurisdiction.

Serene's involvement in custody proceedings in Tioga and Luzerne Counties gave rise to "accompanying substantive obligations" imposed by Pennsylvania law.  Serene, for example, became obligated to obey court rulings and to act truthfully with respect to the tribunals.  If the plaintiffs' claims here were based on Serene's alleged failure to comply with Pennsylvania court rulings or on alleged misstatements in the custody proceedings, then the litigation would bear a sufficient relationship to the obligations imposed by Serene's contacts with Pennsylvania to support specific jurisdiction.  None of the plaintiffs' claims in this litigation, however, is based on anything Serene said or did in the Pennsylvania custody proceedings.  As such, this litigation does not "arise from or

relate to" Serene's actions in those proceedings and those actions do not support specific jurisdiction.

Specific jurisdiction exists, however, with respect to one set of claims that the plaintiffs make against Isara Serene. The plaintiffs allege that Serene entered into an agreement with defendant Sergeant Tripp of the Pennsylvania State Police "to use the under color of state authority [sic] to deprive David Bush of his association right to be with and raise his children."  As a result of this agreement, the plaintiffs allege that Sergeant Tripp refused to enter the Bush-Serene children's names into the NCIC database after Serene took them from Pennsylvania in 2004. Am. Compl.¶¶ 45-50.

By allegedly entering into an agreement with Sergeant Tripp to have him deliberately decline to perform his duty as a Pennsylvania state trooper, Serene purposefully availed herself of the privilege of acting in Pennsylvania and satisfied the first element of specific jurisdiction.  Serene's alleged agreement was made with a Pennsylvania law enforcement officer and was allegedly intended to interfere with his duties in Pennsylvania.  The allegations concerning Serene and Sergeant Tripp also satisfy the second element for specific jurisdiction because the claims concerning Serene and Sergeant Tripp "arise out of and relate to" the alleged agreement.

The third required element for specific jurisdiction is that its exercise must comport with fair play and substantial justice.  Factors to be considered in determining this are "'the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate  . . . judicial system's interest in obtaining the most efficient resolution of controversies.'"  O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477).

After examining all of these factors, the Court finds that the exercise of personal jurisdiction over Serene is reasonable with respect to the allegations concerning the agreement with Sergeant Tripp.  In particular, the Court finds that Pennsylvania has a strong interest in adjudicating allegations that one of its law enforcement officers deliberately disregarded his duties.  The Court also finds that litigation in Pennsylvania would not unduly burden defendant Serene, given that she has conceded that she has participated in custody proceedings in the state during recent years.

B    Supplemental Submissions Required of the Parties to
     Address the Remaining Issues Raised in the Motions.

Having found that the Court lacks personal jurisdiction over defendants Adams and Russell and has personal jurisdiction over defendant Serene only by virtue of the plaintiffs' civil

38

conspiracy claim against her and Sergeant Tripp, the Court will require supplemental submissions from the parties before disposing of the remaining issues raised by the parties' motions.

1    Submission regarding the Dismissal or Transfer of the Plaintiffs' Claims against Adams and Russell

The Court has found that it lacks personal jurisdiction over Officers Adams and Russell.  The Court may therefore either dismiss the plaintiffs' claims against those defendants or sever those claims and transfer them to another federal forum where personal jurisdiction exists and venue is proper.  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (holding that a court lacking personal jurisdiction may transfer a case under 28 U.S.C. § 1406(a), rather than dismiss it); see also Lafferty v. St. Riel, 495 F.3d 72 (3d Cir. 2007).

In their motion, Adams and Russell sought to dismiss the claims against them for lack of personal jurisdiction and lack of venue, and in the alternative, sought to have the claims against them severed and transferred to the Eastern District of Virginia for the convenience of parties and witnesses under 28 U.S.C. § 1404(a).  Neither Adams and Russell nor the plaintiffs addressed whether the claims should be transferred under § 1406, in the event the Court found that it lacked personal jurisdiction.  The Court will therefore request that the parties file supplemental submissions addressing whether the Court should dismiss or sever

39

and transfer the claims against Adams and Russell.  These
submissions should also address whether, if the Court finds that
it lacks jurisdiction against Isara Serene, the claims against her
should be dismissed or severed and transferred.

>       2       Submission regarding Potentially Dispositive Case
>               Law Related to Civil Conspiracy Claim Against Serene

       In addition to moving to dismiss for lack of personal
jurisdiction, Serene has also moved to dismiss all claims against
her under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.
As set out above, the Court has found that it has personal
jurisdiction over Serene only by virtue of one of plaintiff's
claims – that for state law conspiracy.  If that conspiracy claim
is legally insufficient to state a claim, then the Court will lack
personal jurisdiction over Serene.  Judicial economy therefore
suggests that the Court start any 12(b)(6) analysis with the
plaintiffs' conspiracy claim.

       In beginning its analysis of that claim, however, the
Court discovered a line of potentially dispositive cases that the
parties had not addressed.  Rather than continue its analysis of
the conspiracy claim against Serene without benefit of the
parties' thoughts on these cases, the Court has decided to order
supplemental submissions from the parties on that issue.  Once the
Court has received the supplemental submissions, the Court can

begin its analysis of Serene's 12(b)(6) motion anew with the benefit of the parties' thoughts on all the issues it raises.

Because the Court is requesting these supplemental submissions at an early stage of its analysis of the issues raised by Serene's 12(b)(6) motion, the parties should not interpret the Court's request for such submissions to suggest that the issues raised by this line of cases are the only potential grounds for Court's eventual decision on the motion. The Court has yet to decide any of the 12(b)(6) grounds raised by Serene (and opposed by plaintiffs) and will grapple with them only after it receives the parties' supplemental submissions. The Court may ultimately decide the 12(b)(6) motion on issues raised in the parties' existing briefing.

The Court will now discuss the line of cases and the tentative argument upon which it would like the parties' thoughts. These cases suggest that there is no private cause of action in Pennsylvania for a police officer's "nonfeasance" or failure to perform his official duties. If this is a valid statement of Pennsylvania law, then it could be argued that Sergeant Tripp's alleged failure to investigate the Bush-Serene's children's removal from Pennsylvania or to put the children's names in the NCIC database are allegations of "nonfeasance" and so cannot be the subject of a private right of action under Pennsylvania law. If the plaintiffs do not have a private right of action against

41

Tripp for these acts, then they cannot maintain a civil conspiracy claim against Serene for conspiring with Tripp to perform those same acts. <u>Phillips v. Selig</u> __ A.2d __, 2008 WL 4603476 (Pa. Super. Ct. Oct. 17, 2008) ("absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act").

The cases that the Court has found that suggest that Pennsylvania does not recognize a private right of action for law enforcement "nonfeasance" are <u>Caldwell v. City of Phila.</u>, 517 A.2d 1296, 1299 (Pa. Super Ct. 1986) <u>Melendez v. City of Phila.</u>, 466 A.2d 1060, 1063 (Pa. Super. Ct. 1983); <u>Berlin v. Drexel Univ.</u>, 10 D. & C. 3rd 319, 329 (C.P. Phila. Co. 1979; and <u>Miller v. U.S.</u>, 561 F. Supp. 1129, 1135, 1137 (E.D. Pa. 1983).

As stated in <u>Melendez</u>, acts of nonfeasance by a law enforcement officer – a failure to perform one's duties – are ordinarily not actionable because they are public duties owed to the citizenry at large and not to any individual. <u>Melendez</u>, 466 A.2d at 1063. "If a duty which the official authority imposes upon an officer is a duty to the public, then a failure to perform it, or an inadequate or erroneous performance, must be a public not an individual injury and must be addressed, if at all, in some form of public prosecution." <u>Caldwell</u>, 517 A.2d at 1299 (quoting <u>Berlin</u>, 10 D. & C. 3rd at 329). Breach of such duties ordinarily does not create liability on the part of an individual absent a

42

"special relationship" between the individual and the officer, such as when an officer has placed an individual in danger or has specifically undertaken a responsibility to provide adequate protection.  Caldwell at 1299; see also Miller, 561 F. Supp. AT 1135, 1137 (noting that prior Pennsylvania decisions "did not intend to impose any liability on the police department for nonfeasance" absent a special relationship, but predicting that the Pennsylvania Supreme Court would impose a duty on a police department to protect informants with whom it had established such a relationship).

        As set out in the accompanying order, the Court directs the parties to file supplemental submissions addressing the applicability of these cases to the plaintiffs' conspiracy claim against Serene and Tripp.


        An appropriate Order follows.

43

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BUSH and                :    CIVIL ACTION
CHRISTOPHER BUSH              :
                             :
        v.                    :
                             :
S.C. ADAMS, et al.,          :    NO. 07-4936

ORDER

AND NOW, this 3rd day of November, 2008, upon consideration of the Motion to Dismiss, Transfer Venue or Quash Service of defendants Sean Adams and Brian Russell (Docket No. 10) and the Motion to Dismiss Plaintiffs' First Amended Complaint of defendant Sara Nicole Bush a/k/a Serene Isara Isabella a/k/a Sara Nicole Monserrate a/k/a Sara Nicole Monserrate Bush (hereinafter "Serene") (Docket No. 11), and the responses thereto, IT IS HEREBY ORDERED, for the reasons set out in the accompanying memorandum of law, that:

1.    The Motion to Dismiss, Transfer Venue or Quash Service of defendants Sean Adams and Brian Russell is GRANTED IN PART as follows.  The Court finds that it lacks personal jurisdiction against defendants Adams and Russell, but will require supplemental submissions by the parties before determining whether the Court should dismiss the claims against Adams and Russell or whether it should sever those claims and transfer them to an appropriate forum.

2.    The Court will require supplemental submissions by the parties before it can resolve the issues raised by Serene's Motion to Dismiss.  These supplemental submissions should address the case law described in the accompanying memorandum of law which suggests that the plaintiffs' civil conspiracy claim against defendant Serene may not be cognizable under Pennsylvania law.

3.    The plaintiffs shall file the supplemental submission required by this Order and more fully described in the accompanying memorandum of law on or before November 17, 2008. The defendants may file a response to the plaintiffs' supplemental submission on or before November 26, 2008.


                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.

2