IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BUSH and                  :       CIVIL ACTION
CHRISTOPHER BUSH                 :
                                :
     v.                         :
                                :
S.C. ADAMS, et al.,             :       NO. 07-4936

MEMORANDUM AND ORDER

McLaughlin, J.                              January 27, 2009

     On November 3, 2008, the Court issued a Memorandum and
Order in this case concerning two motions to dismiss, one filed
by defendant Isara Isabella Serene and one filed by defendants
Sean Adams and Brian Russell.

     The November 3 Memorandum and Order addressed but did
not decide Isara Isabella Serene's motion to dismiss.  Serene
moved to dismiss the claims against her both for lack of personal
jurisdiction and for failure to state a claim.  In the November 3
Memorandum, the Court analyzed Serene's jurisdictional arguments
and found that personal jurisdiction could properly be asserted
over Serene on the basis of the plaintiffs' state law conspiracy
claim, which alleged that Serene conspired with another
defendant, a Pennsylvania state trooper referred to only as
Sergeant Tripp.  Having addressed Serene's jurisdictional
arguments, the November 3 Memorandum and Order deferred a
decision on Serene's legal sufficiency arguments.  The Court
explained that its review of the applicable law concerning the

state law conspiracy claim had uncovered a line of authority that had not been discussed by the parties and that cast doubt on the viability of the claim.  The Court therefore required the plaintiffs and defendant Serene to file submissions addressing this additional authority before the Court resolved the remaining issues in Serene's motion.

The November 3 Memorandum and Order also addressed Adams and Russell's motion.  Adams and Russell moved to dismiss the claims against them for both lack of personal jurisdiction and lack of venue, and in the alternative, moved to have the claims against them severed and transferred to the United States District Court for the Eastern District of Virginia for the convenience of parties and witnesses under 28 U.S.C. § 1404(a). In the November 3 Memorandum and Order, the Court determined that it lacked personal jurisdiction over Adams and Russell and declined to reach their arguments as to venue or § 1404 transfer. In the absence of personal jurisdiction, a district court is required "either to dismiss or transfer to a proper forum." Lafferty v. St. Riel, 495 F.3d. 72, 76-77 (3d Cir. 2007). Finding that neither the plaintiffs nor Adams and Russell had fully addressed how the Court should proceed if it found no personal jurisdiction, the Court required the plaintiffs and defendants Adams and Russell to submit supplemental briefing on the issue.

The Court has now received the supplemental submissions that it ordered from the parties and resolves the outstanding issues concerning Serene's and Adams and Russell's motions to dismiss.[1]

The Court will dismiss the plaintiffs' claims against defendant Serene.  The Court finds that the allegations of conspiracy concerning Serene and Sergeant Tripp, over which the Court previously found it could exercise personal jurisdiction, fail to state a claim and should be dismissed under Fed. R. Civ. P. 12(b)(6).  The remaining claims as to Serene will be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) for the reasons set forth in the Court's November 3, 2008, Memorandum and Order.

---

[1]    The Court's November 3, 2008, Order required the plaintiffs to file their supplemental submissions on or before November 17, 2008, and the defendants to file theirs on or before November 26, 2008.  The plaintiffs failed to file their submission by the date ordered by the Court.  Instead, on November 26, 2008, the plaintiffs filed a "Reply Memorandum Requested by the Court with a Motion for Leave to Enlarge the Time to File Late" (Docket No. 28).  The plaintiffs' memorandum/motion offers no excuse for their failure to comply with the deadline, but states that the delay has caused no prejudice to the defendants.  Defendants Adams and Russell responded to the plaintiff's memorandum/motion, arguing that they suffered prejudice from the late filing because they incurred the cost of preparing an additional brief to respond to the arguments in the plaintiffs' untimely submission.  Although the Court is disturbed by the plaintiffs' unexplained failure to comply with the deadlines set out in the Court's Order, the Court finds any prejudice from the delay to be minimal and has therefore considered the arguments in the plaintiffs' late submission in reaching its decision.

The Court will dismiss, rather than sever and transfer, the plaintiffs' claims against defendants Adams and Russell. The Court finds that the circumstances of this case do not support either a severance or a transfer to another jurisdiction over the opposition of the plaintiffs.

I.   FACTUAL BACKGROUND

The Court previously described at length in its Memorandum and Order of November 3, 2008, the allegations of the amended complaint and the supplemental evidence submitted by the parties concerning jurisdiction. The Court incorporates that discussion by reference and will not repeat it here. For clarity, the Court will give a brief summary of the case and the facts necessary for an understanding of its decision.

This case is brought by two plaintiffs, David and Christopher Bush, who are brothers. David Bush was married, and subsequently divorced from, defendant Isara Isabella Serene, with whom he had two children. Until 2004, David Bush and Serene both lived in Pennsylvania. In 2004, after having obtained custody of the children and a protection from abuse order against David Bush from a Pennsylvania court, Isara Isabella Serene fled Pennsylvania with her children and without court approval. She subsequently moved to Virginia where she changed her children's names and Social Security numbers to avoid being located.

After Serene left, David Bush sought help in finding Serene and the children from defendant Sergeant Tripp of the Pennsylvania State Police.  According to the plaintiffs' amended complaint, based on what David Bush told him, Sergeant Tripp had a duty to place the names of his children into the National Crime Information Center ("NCIC")'s Missing Child database.  The amended complaint alleges, however, that Tripp intentionally failed to place the children's names in the database or otherwise search for the children because Tripp had entered into an agreement with Isara Serene "to use the under color of state authority [sic] to deprive David Bush of his association right to be with and raise his children."  Am. Compl. ¶¶ 46-47.

David Bush then turned for assistance to his brother, Christopher Bush, a police officer in Newtown Township, Pennsylvania, and Christopher Bush placed the names of the Bush-Serene children into the NCIC database.  With his brother's help, David Bush located the children in Virginia in 2006.  David Bush then obtained an order from a Pennsylvania court granting him custody of the children and traveled to Virginia in October 2006. In Virginia, David Bush enlisted the aid of Virginia police to take his children from their schools in the middle of the day and return them to his custody, after which he then returned with them to Pennsylvania.

5

Defendant Serene, upon learning that her children had been taken from school and given to her ex-husband, began legal proceedings to have them returned.  As part of these efforts, she traveled to Pennsylvania where she had the order that granted custody to David Bush vacated as improvidently granted.  Serene then obtained a custody order from a Virginia court and sought to have David Bush arrested and the children returned.  To do so, Serene contacted defendants Adams and Russell who are officers in the Richmond, Virginia police department.  Adams and Russell obtained an arrest warrant for David Bush for child abduction by a parent and for conspiracy.  David Bush was arrested on the warrant in Pennsylvania and extradited to Virginia where the charges against him were ultimately dropped.

Christopher Bush was subsequently investigated by the Pennsylvania State Police for his actions in seeking to locate the children.  The investigation was allegedly initiated by Sergeant Tripp and defendant state troopers Kenneth Hill and Steven J. Ignatz for the purpose of retaliating against him for helping his brother.  Christopher Bush was ultimately cleared of wrongdoing in the investigation.

On the basis of these facts, the plaintiffs' amended complaint brings claims under federal and state law, seeking damages for David Bush's arrest and imprisonment and for the Pennsylvania State Police investigation into Christopher Bush.

II.   <u>ANALYSIS</u>

    A   <u>Defendant Serene's Motion to Dismiss</u>

        In its prior Memorandum and Order of November 3, 2008, the Court deferred a decision on defendant Isara Isabella Serene's motion to dismiss.  The November 3 Memorandum analyzed the arguments in defendant Serene's motion to dismiss concerning personal jurisdiction, but put off addressing her arguments that the plaintiffs' allegations failed to state a claim until after the Court received the parties' supplemental submissions.  Having received those submissions, the Court will now decide Serene's motion.

        1   <u>The State Law Claim Alleging a Conspiracy Between Serene and Sergeant Tripp</u>

        The supplemental submissions that the Court requested from the plaintiffs and Serene concerned a line of Pennsylvania decisions on official nonfeasance relevant to the plaintiffs' state law conspiracy claim alleging an agreement between Serene and Sergeant Tripp.  The Court will therefore begin its analysis with this claim.

        In its November 3, 2008, decision, the Court determined that it had specific personal jurisdiction over Serene as to the state law claim of conspiracy between Serene and Sergeant Tripp. The Court must now determine whether the allegations concerning the Tripp-Serene conspiracy properly state a claim.

The amended complaint alleges that Serene and Sergeant Tripp entered into a "continuing agreement" on or about April 2005, under which Tripp would "facilitate [Serene] in absconding" from Pennsylvania with her children by failing to search for either Serene or the children and by failing to enter the children's names into the NCIC missing children database.  As a result of this conspiracy, David Bush was "not provid[ed] police services he was entitle[d] to."  Am. Compl. ¶¶ 111-13.  In support of the existence of this conspiracy, the plaintiffs allege on information and belief that Tripp is a member of the local Mansfield, Pennsylvania chapter of "an organization that hides women and children" to which either Serene or her attorney also belong.  Am. Compl. ¶ 46.

> a   Pennsylvania Law Concerning Law Enforcement
>     Nonfeasance

Because the allegations concerning the Serene-Tripp conspiracy state that the two conspired to have Sergeant Tripp fail to perform his official duties, these claims implicate a line of decisions that hold that Pennsylvania does not recognize a state law cause of action for a law enforcement officer's "nonfeasance."  The Court directed the plaintiffs and Serene to provide supplemental briefs addressing the application of these decisions to the conspiracy claim relating to Serene and Tripp.

Having reviewed the parties' submissions, the Court concludes that these cases are distinguishable.

Three state court decisions and one federal district court decision have considered whether Pennsylvania law would recognize a private cause of action against a law enforcement officer or a municipality for law enforcement's failure to act to protect an individual.  These decisions all hold that acts of "nonfeasance" by a law enforcement officer – a failure to perform one's duties – are ordinarily not actionable under Pennsylvania law because they are public duties owed to the citizenry at large and not to any individual.  See Miller v. U.S., 561 F. Supp. 1129, 1134-37 (E.D. Pa. 1983); Caldwell v. City of Phila., 517 A.2d 1296, 1299 (Pa. Super Ct. 1986);  Melendez v. City of Phila., 466 A.2d 1060, 1063 (Pa. Super. Ct. 1983); Berlin v. Drexel Univ., 10 D. & C.3d 319, 329 (C.P. Phila. Co. 1979).  A law enforcement officer or police department is therefore liable for nonfeasance only if law enforcement has a "special relationship" with an individual, such that it has voluntarily assumed responsibility to protect the individual from harm.  See Miller at 1134; Melendez at 1063; Caldwell at 1300; Berlin at 328.

If Sergeant Tripp's failure to search for the Serene-Bush children or place the children's names into the NCIC database can be properly characterized as nonfeasance (and if

Pennsylvania law applies here[2]), then <u>Miller</u>, <u>Caldwell</u>, <u>Melendez</u>, and <u>Berlin</u> would suggest that the plaintiffs have no cause of action under Pennsylvania law against Tripp for this conduct.  If the plaintiffs have no independent cause of action against Tripp, then they can have no conspiracy cause of action against Serene: "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." <u>Phillips v. Selig</u>, 959 A.2d 420, 2008 WL 4603476 at *13 (Pa. Super. Ct. Oct. 17, 2008) (internal quotation and citation omitted).

Upon careful consideration, however, the Court does not believe that the plaintiffs' allegations against Tripp can be characterized as alleging only nonfeasance.  Although the amended complaint alleges that Tripp failed to perform his official duties, it also specifically alleges that his failure to do so was intentional.  Am. Compl. at ¶ 47.  The Court finds that, under Pennsylvania law, nonfeasance refers only to a negligent, not an intentional, failure to act.

---

[2]     The plaintiffs' amended complaint does not specify whether it is alleging conspiracies under Pennsylvania or Virginia law, nor have the plaintiffs addressed the choice of law issue in their brief.  Defendant Serene's brief cites only Pennsylvania law in arguing that the conspiracy claim should be dismissed, but states in a footnote that she does so only because "it appears Plaintiffs seek redress under Pennsylvania law."  Her brief states that Serene "does not concede that Pennsylvania law is the correct choice of law in this case."  Serene Br. at 24 n.4.  Because the Court finds this line of Pennsylvania caselaw inapplicable, it does not reach the choice of law issue.

All four decisions holding that Pennsylvania does not recognize a cause of action for law enforcement nonfeasance involve only allegations of negligence.  <u>Miller</u>, 561 F. Supp. at 1134 (negligent failure to protect confidential informant); <u>Caldwell</u>, 517 A.2d at 1299 (negligent failure to provide adequate police protection to unsafe railroad station);  <u>Melendez</u>, 466 A.2d 1063 (negligent failure to quell racial disturbance); <u>Berlin</u>, 10 D. & C.3d at 329 (negligent failure to provide adequate police protection to unsafe neighborhood).  The very concept of nonfeasance was developed "in negligence actions at early common law."  <u>Miller</u> at 1134; <u>see also</u> <u>Nelson v. Dusquene</u> <u>Light Co.</u>, 12 A.2d 299, 303 (Pa. 1940) (describing negligence as consisting of both "nonfeasance, that is, omitting to do or not doing, something which ought to be done . . . and malfeasance, that is, the doing of something which ought not to be done . . .").

Given this consistent application of the term "nonfeasance" only to negligent failures to act, the Court does not believe that Pennsylvania would extend the meaning of nonfeasance to encompass allegations of an intentional failure to act.  Sergeant Tripp's allegedly intentional actions in failing to look for Bush-Serene children or to place their names in the NCIC database are therefore not "nonfeasance" under Pennsylvania

law and <u>Miller</u>, <u>Caldwell</u>, <u>Melendez</u>, and <u>Berlin</u> are inapplicable to the plaintiffs' conspiracy claim against Tripp and Serene.

   b <u>The Sufficiency of the Conspiracy Allegations</u>

   Having found that Pennsylvania law concerning law enforcement nonfeasance is inapplicable here, the Court turns to Serene's argument that the plaintiffs have failed to adequately allege the existence of a conspiracy between Serene and Sergeant Tripp.

   In <u>Bell Atlantic Corp. v. Twombly</u>, the United States Supreme Court clarified the standard to be used to judge the legal sufficiency of a complaint.  550 U.S. 544, 127 S. Ct. 1955 (2007).  The <u>Twombly</u> Court rejected an earlier, long-quoted statement that a complaint should be dismissed only if it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" <u>Id.</u>, 127 S. Ct. at 1968 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Instead, the Court held that, to state a claim, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.  In the context of evaluating the legal sufficiency of a claim of antitrust conspiracy, the Court held that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made" and requires allegations

that provide "plausible grounds to infer an agreement."  Id.  The United States Court of Appeals for the Third Circuit, in a decision extending Twombly outside the antitrust context to a case, like this one, involving civil rights violations, summarized Twombly as requiring "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation."  Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

In discussing plausibility, the Twombly Court took care to emphasize that a court considering a motion to dismiss cannot question whether the factual allegations of a complaint are plausible.  Twombly leaves untouched the requirement that, in evaluating a motion under Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  See Phillips, 515 F.3d at 234.  Twombly states that a court must assume "that all of the allegations in the complaint are true (even if doubtful in fact)" and cautions that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible."  Id., 127 S. Ct. at 1965.  What must be plausible under Twombly, therefore, is not the complaint's factual allegations themselves, but the inferences or suggestions that result from those facts and that give rise to the plaintiff's right to relief.

13

Applying the <u>Twombly</u> standard to the plaintiffs' claim that defendant Serene conspired with Sergeant Tripp, the Court accepts as true the plaintiffs' allegation that Sergeant Tripp is a member of the local chapter of an unnamed organization that "hides women and children" and that either defendant Serene or her custody attorney also belong to this organization. This is the principal factual allegation in the amended complaint supporting the existence of the agreement. The other allegations concerning Serene and Tripp's alleged conspiracy merely set out the contents of the alleged agreement, stating that Tripp agreed to aid Serene in fleeing Pennsylvania with her children by disregarding both his official duty and orders from the district attorney to search for the children and to place their names in the NCIC database.

The Court finds that the allegation concerning Tripp and Serene's (or Serene's lawyer's) membership in an organization that "hides women and children" is insufficient as pled to suggest or infer an agreement between Tripp and Serene. The Court begins with the observation that, considered by itself, apart from any supporting factual allegations, the alleged conspiracy between Serene and Tripp is implausible. It is not inherently likely that a state trooper would conspire with a private citizen to assist her in fleeing the jurisdiction with her minor children by deliberately refusing orders to search for

14

the children.  The question that must be answered under <u>Twombly</u>

is whether the additional allegation about a common membership in

an organization "that hides women and children" is enough to make

the existence of a conspiracy plausible.  Upon careful

consideration, the Court finds that, absent additional details

concerning the alleged organization and Tripp and Serene's (or

Serene's lawyer's) membership, it is not.

Other than alleging their common membership in this

organization, the amended complaint says nothing about Serene and

Tripp's relationship with each other.[3]  The amended complaint does

not allege that they were acquaintances or friends, or even that

---

[3]     At oral argument, plaintiffs' counsel elaborated on the
allegations in the amended complaint concerning both the
organization and the relationship between Tripp and Serene.
Plaintiffs' counsel stated that the organization did have a name,
which he had in his notes, but that he did not know it from
memory and was unable to provide it to the Court.  He stated that
the organization "helps women who are battered" and that it holds
meetings.  He also stated that his client believed that both
Serene and her lawyer were members of the organization.
Plaintiffs' counsel later clarified that all his information
about this organization came from his client and had not been
independently verified by him.  5/2/08 Tr. at 8-9, 64-65.
Plaintiffs' counsel also stated that Sergeant Tripp and Serene
knew each other before Serene left Pennsylvania, and that this
was corroborated by notes of a Virginia police officer describing
a conversation with Sergeant Tripp, in which Tripp stated he had
been "involved in this thing" for a long time.  <u>Id.</u> at 15, 21,
64-65.  Counsel for both Tripp and Serene denied that the two
knew each other, except to the extent that Sergeant Tripp may
have responded to disturbances at the Serene-Bush household in
the course of his duties.  <u>Id.</u> at 24, 36.  None of these
additional facts is alleged in the complaint and none can
therefore be considered by the Court in evaluating Serene's
12(b)(6) motion.

they knew each other.  The plaintiffs' allegations do not give the name of the organization or describe it, or its activities, in any way, other than that it "hides woman and children."  No details about the organization are given that would allow the Court to assess how likely it is that Tripp and Serene's, or her lawyer's, common membership would allow an inference that they knew each other and might plausibly have conspired as alleged. Absent such additional allegations, the bare allegation that Tripp and Serene (or her lawyer) shared a common membership in an organization, even one allegedly devoted to hiding women and children, is not enough to give plausible grounds to infer an agreement between the two.

Because the plaintiffs have failed to adequately allege the existence of an agreement, the state law claim alleging a conspiracy between Tripp and Serene will be dismissed.

### 2   The Remaining Claims Against Serene Will Also Be Dismissed

In its November 3, 2008, Memorandum and Order, the Court determined that it had personal jurisdiction over Serene with respect to the state law conspiracy claim against her and Sergeant Tripp, but determined that it did not have personal jurisdiction over Serene with respect to her federal claims under 42 U.S.C. § 1983 or her other state law claims.  The Court then deferred a determination on Serene's 12(b)(6) arguments and

16

ordered supplemental submissions.  In doing so, the Court stated that if the Court subsequently determined that the Serene-Tripp conspiracy allegations over which it had personal jurisdiction failed to state a claim, then the Court believed that it "would lack personal jurisdiction over the remaining claims" and they could be dismissed under Fed. R. Civ. P. 12(b)(2).  Memorandum of November 3, 2008, at 40.

        In making this last statement, the Court implied that, if the Serene-Tripp conspiracy claim were legally sufficient, then the fact that the Court could exercise personal jurisdiction over this claim would allow it to exercise personal jurisdiction over the other federal and state claims against Serene, even though the Court had determined that those claims would not support personal jurisdiction on their own.  This implication, which has not been challenged by either Serene or the plaintiffs, is incorrect.

        The Court properly stated in its Memorandum and Order of November 3, 2008, that an analysis of specific personal jurisdiction must be done claim-by-claim.  Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2001).  The result of such an analysis, however, is also claim-specific, and a court, having determined that personal jurisdiction exists over a defendant with respect to one claim, cannot use that claim to exert personal jurisdiction over the same defendant with respect to other claims

17

that do not otherwise support such jurisdiction.  Remick v.
Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).  In Remick, the Third
Circuit Court of Appeals conducted a claim-by-claim analysis of
personal jurisdiction and upheld the exercise of personal
jurisdiction over individual defendants on claims for breach of
contract and tortious interference, but found no personal
jurisdiction as to claims of defamation and misappropriation and
ordered those latter claims dismissed.  Id. at 256-61.

        Because the determination of personal jurisdiction is
claim-specific, the Court's previous conclusion in the November
3, 2008, Memorandum and Order that personal jurisdiction over
Serene does not exist for certain of the plaintiffs' claims
requires that those claims be dismissed against Serene.


                a.   Federal Civil Rights Claims against Serene

        The federal civil rights claims against Serene (Amended
Complaint Counts I-III) are asserted by plaintiff David Bush
under 42 U.S.C. § 1983 against defendants Serene, Adams, and
Russell for David Bush's allegedly wrongful arrest and
prosecution on Virginia charges.  As found in the November 3,
2008, Memorandum and Order, these claims do not support the
exercise of personal jurisdiction over Serene because she did not
purposefully avail herself of the privilege of acting in
Pennsylvania or purposefully target Pennsylvania in seeking to

have Officers Adams and Russell arrest David Bush.  Under <u>Remick</u>,
these claims must therefore be dismissed.[4]

        b       State Law Claims Against Serene for
                       Assault/Battery, False Imprisonment,
                       Intentional Infliction of Emotional Distress,
                       Malicious Prosecution, Wrongful Use and Abuse
                       <u>of Process, and Defamation - False Light</u>

Count IV of the Amended Complaint alleges a variety of
state law claims against Serene:  assault/battery, false
imprisonment, intentional infliction of emotional distress,
malicious prosecution, wrongful use and abuse of process, and
defamation - false light.  All of these claims except the claim
for defamation stem from David Bush's arrest and prosecution.
David Bush's arrest is alleged to constitute assault and battery
and false imprisonment; his prosecution is alleged to constitute
malicious prosecution and wrongful use and abuse of process; and
both the arrest and prosecution are alleged to have subjected
David Bush to emotional distress.  Like the federal civil rights
claims, because these claims relate to Mr. Bush's arrest and
prosecution, they do not support personal jurisdiction over

---

       [4]    Neither Serene nor the plaintiffs have requested that
the Court consider whether to sever and transfer, rather than
dismiss, any claims over which it lacks personal jurisdiction.
Serene expressly requests in her motion that any such claims be
dismissed.  The plaintiffs, while not specifically addressing the
possibility of transferring claims against Serene, have sought
dismissal, rather than transfer, of claims against Adams and
Russell over which personal jurisdiction is lacking.

Serene in Pennsylvania for the reasons set out in the November 3, 2008, Memorandum and Order and must therefore be dismissed.

The defamation claim in Count IV arises not out of David Bush's arrest and prosecution, but out of allegedly false statements by Serene that led to the arrest and which were allegedly published and republished by Serene, Adams and Russell. Serene is alleged to have published a false communication "when she on or about October 21, 2006, spoke with Defendants Adams and Russell, who thereafter republished the information by word and writing to others, and each said that David Bush engaged in conduct that was illegal, such as he physically abused her and the children and kidnapped them." Am. Compl. ¶ 105. Serene, Adams, and Russell are alleged to have published or republished this false information to the FBI, U.S. Marshals, U.S. Attorneys General, District Attorneys, and court officials. Am. Compl. ¶ 106.

Neither the allegations of the amended complaint, nor the affidavits and other material the plaintiffs provided in opposition to Serene's motion, identify any specific communication that Serene had with any of these FBI agents, U.S. Marshals, Attorneys General, District Attorneys or other officials, or state specifically that she ever published any

allegedly defamatory statements in Pennsylvania.[5]  The plaintiffs
have argued that notes from the Virginia police department
indicate that Serene spoke to Sergeant Tripp in October 2006, but
neither the notes nor any other material provided by the
plaintiffs indicate the content of their conversations, and the
amended complaint does not mention Sergeant Tripp or the
Pennsylvania State Police as one of the law enforcement personnel
to whom defamatory statements were made, nor is Tripp named as a
defendant in the defamation claim.  See Am. Compl. ¶¶ 105-06.
The only specific defamatory statement by Serene mentioned in the
amended complaint is her conversation with Adams and Russell in
Virginia that led to the issuance of the arrest warrant for David
Bush.  Am. Compl. at ¶ 105.

        The allegations of defamation against Serene are
insufficient to support personal jurisdiction.  See Marten v.
Godwin, 499 F.3d 290, 297 (3d Cir. 2007).  In Marten, discussed
at length in the Court's November 3, 2008, Memorandum and Order,
a Pennsylvania student who was taking classes over the internet
from a Kansas university sued the university and several of its
administrators and teachers after he was expelled.  The Marten
court upheld the dismissal of the plaintiffs' defamation claim

---

        [5]    The amended complaint does allege that Adams and
Russell spoke with these law enforcement personnel in
Pennsylvania, seeking to have David Bush arrested.  See Am.
Compl. at ¶¶ 22, 25, 28.

21

because "nothing in the record indicates that the defendants made defamatory statements or sent defamatory material to Pennsylvania" (except for communications to the plaintiff) and therefore the plaintiff had failed to show "specific facts showing a deliberate targeting of Pennsylvania."  <u>Id.</u>

Here, the plaintiffs have alleged no specific defamatory statements by Serene, other than her statements to Adams and Russell in Virginia that formed the basis for the arrest warrant.  As in <u>Marten</u>, this is insufficient to show either that Serene purposefully directed or deliberately targeted her activities toward Pennsylvania, as required for specific jurisdiction.

c   State Law Claims Against Serene for Civil Conspiracy

Count V of the Amended Complaint brings state law conspiracy claims against the defendants.  Against Serene, at least two separate conspiracies are alleged.

The first conspiracy arises from an alleged agreement between Serene and Officers Russell and Adams to have David Bush arrested and prosecuted on the basis of knowingly false information.  Am. Compl. ¶¶ 109-110.  Personal jurisdiction over Serene is lacking as to this conspiracy for the same reasons that jurisdiction is lacking over the plaintiffs' federal civil rights claims.  As found in the November 3, 2008, Memorandum and Order,

22

Serene did not purposefully avail herself of the privilege of acting in Pennsylvania or deliberately target Pennsylvania in seeking to have Officers Adams and Russell arrest David Bush.  As personal jurisdiction is lacking over this conspiracy claim, it must be dismissed.  See Remick, 238 F.3d 248.

The second conspiracy involving Serene is the alleged agreement between Serene and Sergeant Tripp to have Tripp refrain from investigating the children's disappearance or from putting their names in the NCIC database.  Am. Compl. ¶¶ 111-113.  As discussed earlier in this Memorandum, these allegations do not contain sufficient grounds to plausibly infer the existence of a conspiracy, and so will be dismissed under Fed. R. Civ. P. 12(b)(6).

In addition to these two clearly-pled conspiracies involving Serene, one paragraph of the amended complaint mentions Serene in connection with allegations that defendant Pennsylvania State Troopers Hill, Ignatz, and Tripp allegedly conspired to have plaintiff Christopher Bush investigated for putting the Bush-Serene children's names into the NCIC database.  Paragraph 115 of the amended complaint alleges that "Defendants Adams, Tripp[,] Hill, [Serene], and Ignatz initiated and used a bogus CLEAN investigation [against Christopher Bush]," and paragraph 117 alleges that "the Defendants" conspired by "contact[ing]

Christopher Bush's employer for the purpose to harm [sic] Christopher Bush's employment and good name."

To the extent these allegations are intended to allege a conspiracy between Serene and these other defendants concerning the investigation into Christopher Bush, they fail to state a claim, at least as to Serene, because the amended complaint contains no factual allegations that would provide "plausible grounds" for inferring the existence of a conspiracy, as required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  Other than the conclusory allegations of her participation in the conspiracy, the amended complaint contains no factual allegations linking Serene (or Adams) in any way with defendants Hill or Ignatz or plaintiff Christopher Bush.


B    The Disposition of the Claims Against Defendants Adams and Russell

In its November 3, 2008, Memorandum and Order, the Court determined that it lacked personal jurisdiction over defendants Adams and Russell and granted their motion to dismiss on this ground.  The Court did not decide at that time, however, whether the plaintiffs' claims against Adams and Russell should be dismissed or whether, as Adams and Russell requested, they should be severed from the other claims in this action and transferred to another forum where personal jurisdiction over them would exist.  The Court requested supplemental submissions

from the plaintiffs and Adams and Russell, and those submissions having been received, the Court now decides the issue.

Defendants Adams and Russell, in their supplemental submission, request that the claims against them be severed and transferred to the United States District Court for the Eastern District of Virginia, a forum which Adams and Russell concede would have personal jurisdiction over them.  Adams and Russell argue that a transfer would allow the plaintiffs' claims to proceed on their merits without delay.  In contrast, they argue that if the claims against them were dismissed, any appeal of that dismissal might be delayed until after all of the other claims in the plaintiffs' complaint were resolved, so that if the Court's dismissal were ultimately reversed, any remand would not occur for several years, by which time evidence could become stale or witnesses unavailable.

The plaintiffs, in their submission, oppose any transfer of these claims and instead request that they be dismissed.  The plaintiffs note that their counsel is not licenced to practice in the state of Virginia and so a transfer to that jurisdiction would require them to obtain new counsel and deny them the counsel of their choice.  The plaintiffs argue that this deprivation is of constitutional dimension, apparently believing that a transfer to Virginia would violate their Sixth Amendment right to counsel.  The plaintiffs also argue that

25

Virginia would not be a more convenient forum for the other parties and witnesses, citing the standard for a transfer under 28 U.S.C. § 1404(a).  They also note that a Virginia court would lack personal jurisdiction over the Pennsylvania state trooper defendants, Tripp, Hill and Ignatz.  The plaintiffs also say that they would prefer that the claims against Adams and Russell be dismissed so that they could pursue an immediate appeal of the Court's ruling on jurisdiction.

        The Court finds that both the plaintiffs' and Adams and Russell's arguments fail to grapple with the relevant issues. The plaintiffs' argument that a transfer to Virginia would deprive them of their constitutional right to counsel of their choice is mistaken.  There is no constitutional or statutory right to counsel in a civil case.  Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997).  The fact that the plaintiff's current counsel is not licenced to practice in Virginia is not relevant to deciding whether to transfer or dismiss this case.  In the event of a transfer, the plaintiffs could retain new counsel and could seek, if they chose, to have their current counsel admitted in Virginia pro hac vice.  See E.D. Va. Local Rule 83.1(D).

        Neither the plaintiffs nor Adams and Russell address the legal standard for severing Adams and Russell's claims, a prerequisite to transfer.  Instead, both submissions focus only

26

on the equities of transferring the claims against Adams and
Russell.

### 1.   Severance of Adams and Russell's Claims

When a district court finds that it lacks personal
jurisdiction over a defendant, it may either dismiss the claims
against that defendant or transfer them to a district in which
they could have been brought originally.  Gehling v. St. George's
School of Medicine, Ltd., 773 F.2d 539, 544 (3d Cir. 1985).  When
a case involves multiple defendants and a court finds that it
lacks personal jurisdiction over some, but not all, of them, it
may sever the claims against the parties over whom it lacks
jurisdiction and transfer them to another jurisdiction.  Sunbelt
Corp. v. Noble, Denton, & Assoc., Inc., 5 F.3d 28, 33 (3d Cir.
1993).  In considering severance, a court "should not sever if
the defendant over whom jurisdiction is retained is so involved
in the controversy to be transferred that partial transfer would
require the same issues to be litigated in two places."  Id. at
33-34 (internal quotation and citation omitted).

In this case, all of the claims against Adams and
Russell are also brought against defendant Serene.  As discussed
above, the claims against Serene are to be dismissed and not
transferred.  This raises the possibility, if the claims against
Adams and Russell were transferred to Virginia, and if the

dismissal of the claims against Serene were appealed, that litigation over the same issues would proceed in two separate forums.  Given the possibility of such piecemeal litigation, the Court does not believe that severance would be appropriate here.

2.   <u>Transfer of Adams and Russell's Claims</u>

Even if the claims against Adams and Russell could be severed, the Court does not believe that transfer of the claims would be warranted.

Adams and Russell have sought to transfer the claims against them under both §§ 1404 and 1406.  In general, transfers under § 1404 are discretionary, "made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum," while transfers under § 1406 are made when "plaintiffs file suit in an improper forum."  <u>Lafferty v. St. Riel</u>, 495 F.3d. 72, 76-77 (3d Cir. 2007).  Courts in this circuit, however, have used both statutes to transfer claims when they have found a lack of personal jurisdiction.  <u>See</u> <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 919 F.2d 225, 231 (3d Cir. 1990) (noting that courts have transferred claims over which personal jurisdiction was lacking under § 1406(a)):  <u>U.S. v. Berkowitz</u>, 328 F.2d 358, 361 (3d Cir. 1964) (approving transfer of claims over which personal jurisdiction was lacking under 28 U.S.C. § 1404(a)).

28

a.   <u>Transfer under § 1406</u>

Section 1406(a) provides that a district court in which a case is filed that "lay[s] venue in the wrong division or district, shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  By its terms, § 1406 applies only when a plaintiff has brought his claims in an improper venue.  District courts in this circuit and appellate courts in other circuits, however, have applied § 1406 to cases where venue was proper but personal jurisdiction was lacking.  <u>See</u> <u>Carteret</u>, 919 F.2d at 231 (collecting cases).

In <u>Carteret</u>, the Third Circuit Court of Appeals issued a writ of mandamus to reverse a district court's transfer under § 1406.  The district court, ruling on the defendants' motion to dismiss, had found that it lacked personal jurisdiction over the defendants and ordered the case transferred over the plaintiff's objection to another district pursuant to § 1406(a).  In so ruling, the district court declined to decide the issue of venue, finding that a § 1406(a) transfer was authorized whether or not venue was properly laid.  <u>Id.</u> at 227-28.

On review, the <u>Carteret</u> court declined to decide whether § 1406 authorized a transfer when venue was proper, but personal jurisdiction was lacking.  The <u>Carteret</u> court, noting that several district courts in the Third Circuit and several

29

courts of appeals in other circuits had expressly held that § 1406 permitted transfers in such circumstances, nonetheless stated that it would not resolve the issue, which it said "remains open in this circuit."  Id. at 231.

Instead, the Carteret court held that, even assuming it was proper to equitably expand the reach of § 1406 to such cases, a transfer could not be made over the plaintiff's objection.  Id. at 232.  The court explained that the justification for equitably expanding the reach of § 1406 was to ensure that "a plaintiff properly laying venue but unable to proceed in the transferor court because of jurisdictional problems does not lose its day in court by reason of the running of the statute of limitations in another forum."  Id. at 231-32.  Where a plaintiff opposed such a transfer, however, the "interests of justice" necessary for § 1406(a) transfer would not require a plaintiff "to accept a remedy it did not want and thus lose any opportunity to appeal the jurisdictional ruling."  Id. at 232.

The Court believes that Carteret prevents a transfer of Adams and Russell's claims under § 1406.  Venue over this case appears to be proper in both Pennsylvania and Virginia.  Because this suit brings federal claims, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2). With respect to the claims concerning Adams and Russell, many of

30

the key events, including the issuance of the warrant and the
communications with defendant Serene upon which the warrant was
based, occurred in Virginia.  The actual arrest itself, however,
although not done by Adams and Russell, took place in this
judicial district in Pennsylvania, as did a substantial part of
Mr. Bush's detention as a result of the arrest.  Because a
substantial part of the events giving rise to these claims
occurred in both Virginia and Pennsylvania, venue is proper in
both locations.

Because venue is proper in this district, under
Carteret, the Court cannot transfer this case under § 1406(a)
over the plaintiffs' objections.


b.   <u>Transfer under § 1404</u>

Under 28 U.S.C. § 1404(a), a court may transfer a case
"[f]or the convenience of parties and witnesses, in the interests
of justice" to "any other district or division where it might
have been brought."  Granting a transfer under § 1404(a) is
discretionary and requires a court to consider "all relevant
factors to determine whether on balance the litigation would more
conveniently proceed and the interests of justice be better
served by transfer to a different forum."  Jumara v. State Farm
Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).
Such relevant factors may include private factors, such as the

parties' preferences, where the claim arose, the extent to which witnesses may be unavailable for trial, and public factors, such as any practical considerations that could make trial easy, expeditious, or inexpensive.   Id.

The Court finds that the applicable private factors here are relatively equally balanced between granting and denying a transfer.  The plaintiffs here have expressed a strong preference to have their claims tried in this district, and if the Court finds personal jurisdiction lacking over some defendants, to have those claims dismissed so that the plaintiffs can seek to pursue an immediate appeal of those dismissals. Defendants Adams and Russell equally strenuously favor a transfer to the Eastern District of Virginia.  At oral argument, counsel for Pennsylvania officers Tripp, Hill and Ignatz, indicated that he also favored transferring Adams and Russell's claims to Virginia.  5/2/08 Tr. at 66.  Defendant Serene took no position as to transferring Adams and Russell's claims.

At oral argument, Adams and Russell identified several potential trial witnesses who would be outside this Court's subpoena power, including the Virginia judges who approved Adams and Russell's allegedly wrongfully-obtained warrant and the Virginia district attorney who advised them on probable cause. 5/2/08 Tr. at 53, 58.  There are also several Pennsylvania witnesses relevant to the claims against Adams and Russell who

are likely to be beyond the power of a Virginia court to subpoena for trial, including the Philadelphia FBI agents and U.S. Marshals and the Bucks County district attorney to whom the plaintiffs allege defamatory statements were made.

Although the private factors are relatively balanced, the Court finds that public factors weigh against a transfer. Adams and Russell contend that transferring their claims would be expeditious and efficient because it would allow the claims to proceed on the merits. They argue that a dismissal would cause delay and prejudice because, were the dismissal subsequently appealed and reversed, any proceedings on remand would likely take place several years from now when evidence and witness's memories might be lost or degraded. The Court finds that this risk of delay is outweighed by the risk of duplicative and piecemeal litigation.

As the Court discussed in considering severance, the fact that all claims against defendant Serene will be dismissed (as neither she nor plaintiffs requested that they be transferred) means that, if the claims against Adams and Russell are sent to Virginia, the same claims against different defendants would be pending in two separate jurisdictions. Because of this, any seeming efficiency to allowing the claims against Adams and Russell to proceed on their merits in Virginia

33

is a false one, as it means two courts will consider the same
issues.

   The Court therefore finds that transfer of the claims
against Adams and Russell is not warranted under 28 U.S.C. §
1404(a).


III. <u>CONCLUSION</u>

   For the reasons set out above, the Court is dismissing
the plaintiffs' claims against defendants Serene, Adams, and
Russell.  The remaining claims in this case are those against
defendants Tripp, Hill, and Ignatz, who did not move to dismiss.

   At several points in their supplemental submissions,
the plaintiffs state that, were the Court to dismiss their claims
against Serene, Adams, and Russell, they would seek to file an
immediate appeal of that dismissal and might also move to stay
proceedings against Tripp, Hill, and Ignatz during the pendency
of such an appeal.  The Court takes no view of the likely merits
of any such motion.  The Court will order the plaintiffs to
inform the Court promptly as to how they wish to proceed with
respect to the remaining claims.


   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BUSH and          :    CIVIL ACTION
CHRISTOPHER BUSH        :
                        :
     v.                 :
                        :
S.C. ADAMS, et al.,     :    NO. 07-4936

<u>ORDER</u>

AND NOW, this 27th day of January, 2009, upon consideration of:

A   The Motion to Dismiss, Transfer Venue or Quash Service of defendants Sean Adams and Brian Russell (hereinafter "Adams and Russell") (Docket No. 10) (previously granted in part by the Court in its Order of November 3, 2008);

B   The Motion to Dismiss Plaintiffs' First Amended Complaint of defendant Sara Nicole Bush a/k/a Serene Isara Isabella a/k/a Sara Nicole Monserrate a/k/a Sara Nicole Monserrate Bush (hereinafter "Isara Isabella Serene" or "Serene") (Docket No. 11);

C   Defendants Adams and Russell's Supplemental Submission Regarding Whether the Court Should Dismiss the Claims against These Defendants or Transfer Venue (Docket No. 27);

D   Plaintiffs' Reply Memorandum Requested by the Court with a Motion for Leave to Enlarge the Time to File Late (Docket No. 28);

E    Plaintiffs' Praecipe to Make Part of the Record the Sworn
     Testimony of Police Chief Martin Duffy and Motion for the
     Court to Review the Testimony to Reconsider the
     Jurisdictional Issue and Order (Docket No. 29);[6] and

F    Defendant Serene's Supplemental Brief in Support of the
     Motion to Dismiss for Lack of Jurisdiction (Docket No. 30),

IT IS HEREBY ORDERED, for the reasons stated in a memorandum of
today's date, that:

     1.   The plaintiffs' Motion for Leave to Enlarge the
Time to File Late (Docket No. 28) is GRANTED and the Court will
consider the arguments made in the plaintiffs' untimely
supplemental submissions.

     2.   The Motion to Dismiss Plaintiffs' First Amended
Complaint of defendant Isara Isabella Serene (Docket No. 11) is
GRANTED.  All claims against defendant Serene are DISMISSED under
Fed. R. Civ. P. 12(b)(2) or Fed. R. Civ. P. 12(b)(6), as set out
in the accompanying memorandum of today's date.

     3.   All claims against defendants Sean Adams and Brian
Russell are DISMISSED under Fed. R. Civ. P. 12(b)(2).

---

     [6]    The Court has addressed the plaintiffs' Motion to
Reconsider the Jurisdictional Issue and Order in a separate Order
of today's date.  The Court references the plaintiffs' Motion
here because it includes the plaintiffs' supplemental submission
on Pennsylvania nonfeasance cases relevant to the issues
addressed in this Order.

   4.   The plaintiffs shall file a short statement on or before February 13, 2009, addressing how they propose to proceed with the remaining claims in this case.

                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.