### Page 46

1  A  I don't know. I don't know if I did or not. I have
2  little police investigative notebooks. It might still be in
3  there. I don't know.
4  Q  And it was after this interchange about asking for a
5  particular missing person's report, your words?
6  A  Okay.
7  Q  Okay. A incident report was produced, wasn't it?
8     MR. HENZES: Yes.
9  BY MR. PURICELLI:
10 Q  Incident investigation report?
11 A  Yeah.
12 Q  Okay.
13 A  Yes.
14 Q  So they never gave you what you refer to as a missing
15 person's report, did they?
16 A  Yes, they did.
17 Q  He gave you an incident investigation report?
18 A  UCR Code, missing juvenile.
19 Q  Juvenile?
20 A  Okay.
21 Q  Okay.
22 A  Semantics, okay.
23 Q  Semantics. That's what I want to hear.
24    MR. HENZES: A juvenile is not a person?
25 BY MR. PURICELLI:

### Page 47

1  Q  Now semantics. This you took it as a missing person's
2  report, this report?
3  A  Yes. He put these children into the missing person's
4  file.
5  Q  And you took that to be something relatively
6  understood by most people in the State Police from your
7  training, the semantics you're talking about, missing person,
8  missing juvenile, don't know where the people are?
9  A  Yeah, missing persons.
10 Q  The last paragraph of that report, did you get a copy
11 of the report?
12 A  I did not get a copy of this report.
13 Q  That report indicates the children were with the
14 mother?
15 A  That's correct.
16 Q  Are the children still missing?
17 A  According to him they were because he put them in the
18 missing person file.
19 Q  And it was fair to call them missing then, right, from
20 CLEAN State Police standards, right? Otherwise there would be
21 a violation, right?
22 A  Otherwise, that's correct.
23 Q  So it was okay to do that even though the report says
24 oh, I know they're with the mother?
25 A  Well, they can be with the non-custodial parent and

### Page 48

1  still be missing.
2     MR. PURICELLI: Okay. That's fair. I'll ask my
3  client if he has any more questions, but I knew this would be a
4  quick one.
5     (Discussion held off the record.)
6  BY MR. PURICELLI:
7  Q  Corporal Fultz, have you ever written a letter to any
8  township that you had examined their police department for
9  potential problems with the CLEAN and asked them to investigate
10 an officer?
11 A  I'm processing. Ask that again.
12 Q  Sure. How long have you been doing your CLEAN
13 investigations?
14 A  Since --
15 Q  Almost five years?
16 A  -- '06.
17 Q  Okay.
18 A  March.
19 Q  In those four years that you've been there how many
20 times have you written a letter to an agency, a township,
21 borough, okay, that you went out to look at their police
22 department for potential problems and then asked that police
23 department to discipline one of their officers who you had
24 determined had done nothing wrong?
25 A  I wouldn't ask them to discipline somebody who didn't

### Page 49

1  do anything wrong.
2  Q  Okay.
3  A  And most of the time by the time I get the misuse
4  complaint, local agency who made the complaint has already done
5  their investigation.
6  Q  Okay. And --
7  A  And our -- the CLEAN administrative sanctions are
8  separate from any sanctions given by the municipality or
9  department or agency, whatever it might be.
10 Q  Okay. So has there ever been a complaint that you
11 received from the State Police to go investigate misuse of the
12 CLEAN system?
13 A  You mean on a trooper or on a --
14 Q  No, no. I'll give you a better example so it's not so
15 cloudy. A State Police official makes the complaint and then
16 sends it down the chain of command to you to investigate?
17 A  No, not me personally, no.
18 Q  So this would have been the first time that you
19 received an assignment that appears to have been a complaint
20 generated by the State Police to go investigate a local agency?
21 A  I believe.
22    MR. PURICELLI: Okay. I have nothing further.
23    (Whereupon, the deposition was concluded at 3:02 p.m.)

Page 50

```
    COUNTY OF DAUPHIN        :
 1                           : SS
 2  COMMONWEALTH OF PENNSYLVANIA :
 3        I, Donna E. Gladwin, a Notary Public, authorized to
 4  administer oaths within and for the Commonwealth of
 5  Pennsylvania, do hereby certify that the foregoing is the
 6  testimony of Richard T. Fultz.
 7        I further certify that before the taking of said
 8  deposition, the witness was duly sworn; that the questions and
 9  answers were taken down stenographically by the said
10  Reporter-Notary Public, and afterwards reduced to typewriting
11  under the direction of the said Reporter.
12        I further certify that I am not a relative or employee
13  or attorney or counsel to any of the parties, or a relative or
14  employee of such attorney or counsel, or financially interested
15  directly or indirectly in this action.
16        I further certify that the said deposition constitutes
17  a true record of the testimony given by the said witness.
18        IN WITNESS WHEREOF, I have hereunto set my hand this
19  1st day of August, 2010.
20
21
22
23
24        Donna E. Gladwin, RPR
25             Notary Public
```