

**PENNSYLVANIA STATE POLICE**

CLEAN TRAINING UNIT
Bureau of Technology Services
1800 Elmerton Avenue
Harrisburg, Pennsylvania 17110
Phone: (717)787-1585



**TROOPER RICHARD T. FULTZ**
Training Supervisor
rifultz@state.pa.us   Fax (717)772-1434



**PENNSYLVANIA STATE POLICE**

CLEAN Administrative Section
Bureau of Technology Services
1800 Elmerton Avenue
Harrisburg, Pennsylvania 17110
Phone: (717)787-1438



**LIEUTENANT STEVE J. IGNATZ**
COMMANDER/CJIS Systems Officer
stignatz@state.pa.us   Fax (717)772-1434

1/7/10
Ignatz-1
BCS

**PENNSYLVANIA STATE POLICE**
DEPARTMENT HEADQUARTERS
1800 ELMERTON AVENUE
HARRISBURG, PA 17110

December 12, 2007

Chief Martin C. Duffy
Newtown Township PD
100 Municipal Drive
Newtown, PA 18940

Dear Mr. Duffy:

This correspondence is to inform you of the findings of the CLEAN Quality Assurance Review conducted on December 5, 2007 by Cpl. Gregory L. Johnson. The purpose of the review was to evaluate records entered into CLEAN/NCIC by the Newtown Township PD, to ensure that they were appropriately entered under CLEAN/NCIC policy.

The Computer Operations Division conducts triennial audits of all CLEAN user agencies. We strongly believe that the quality assurance review and proper validation procedures result in CLEAN/NCIC entries that are accurate, timely, complete, and supported by proper documentation.

The enclosed Quality Assurance Review Findings reflects that there were no discrepancies identified at your agency. No follow-up response to this correspondence is necessary. The integrity of CLEAN/NCIC files continues to be of the highest quality because of agencies, such as yours, who follow CLEAN/NCIC policy. We appreciate your accurate record keeping.

If you have any questions please feel free to contact me at 717-783-5575. Thank you for your continuing cooperation.

Sincerely,

*Cpl. Shawn W. Sankey*

Cpl. Shawn W. Sankey
Supervisor, CLEAN Audit Unit
CLEAN Administrative Section

Enclosure

An Internationally Accredited Law Enforcement A 30 / 105

1/7/10
Ignatz-2

PENNSYLVANIA STATE POLICE
TROOP F - AREA II
899 CHERRY STREET
MONTOURSVILLE, PA 17754-2009

July 31, 2007

Detective Christopher Bush
Newtown Twp. Police Department
100 Municipal Drive
Newtown, Pa. 18940

Dear Detective Bush:

Your complaint, Form Number 2006-0692, was forwarded to me for review and response. As the Commanding Officer of Troop F, Montoursville, I exercise oversight for the Mansfield Station. Sergeant Tripp was the Station Commander of the Mansfield Station at the time of this incident. A thorough review of your concern in this matter and attendant circumstances has been conducted.

Based on the facts revealed through this inquiry, there is no evidence of any wrongdoing on the part of Sergeant Tripp or any of the other members of Troop F, Mansfield. A thorough investigation was completed following the initial complaint from your brother David BUSH, including discussions with and approval by the Tioga County District Attorney, given the extensive divorce, custody, PFA, and criminal proceedings between David and Sarah BUSH.

After reviewing the circumstances in this case, there are numerous documented instances of inappropriate conduct committed by you in your capacity as a police officer. You took advantage of your powers as a police officer for personal reasons. You made a CLEAN/NCIC entry for your brother when your department did not have jurisdiction in the case. You wrote up only a minimal investigative report, just enough to avoid a CLEAN User Agreement violation; when confronted by State Police Troopers assigned to the Commonwealth Law Enforcement Assistance Network (C.L.E.A.N.) relative this incident, you vehemently denied having done a Missing Person report. The custody order obtained by your brother in Luzerne County on 6/23/06, was subsequently vacated by that Court on 10/23/06, and termed to be, "inappropriately granted" by said Court, a copy of which I have enclosed.

In light of the above circumstances, the FBI became involved following the inappropriate seizure of the children in Virginia, based on the flawed court order, and required the return of the children to their mother.

*An Internationally Accredited Law Enforcement Agency*

24 / 105

This investigation has clearly revealed your abuse of authority for personal reasons, which was condoned by Chief Martin C. Duffy based on his statements to the C.L.E.A.N. Administrative Section. Your actions exposed yourself, your Chief of Police and your department to the possibility of extensive civil liability at the hands of the former Mrs. Bush.

The State Police CLEAN Administrative Unit was requested to conduct a completely independent review of the facts involving the NCIC entries you made in this case. During that review, members of the CLEAN Administrative Unit were accused by you and Chief Duffy of using the investigation as a retaliatory tactic based on your original complaint to Internal Affairs. During the course of the review, you denied having submitted an investigative report until confronted with the actual document. Given your lack of credibility and the treatment extended to the C.L.E.A.N. Administrative Unit by you and Chief Duffy, I am forwarding this letter, along with your original complaint, to the Newtown Township Police Chief and Supervisors for whatever action they deem appropriate.

Sincerely,

*Capt. K. Hill* (signature)

Captain Kenneth F. Hill
Commanding Officer
Troop F, Montoursville

Enclosure

Copy: Chief, Newtown Twp. P.D.
      Supervisors, Newtown Twp.

offense under this chapter, is guilty of a felony of the third degree.

1974, Dec. 30, P.L. 1120, No. 361, § 2, imd. effective.

### § 2908. Missing children

**(a) Duties of law enforcement agencies.**—Law enforcement agencies shall have the following duties with respect to missing children:

(1) To investigate a report of a missing child immediately upon receipt of the report regardless of the age of the missing child or the circumstances surrounding the disappearance of the child. In no case shall law enforcement agencies impose a mandatory waiting period prior to commencing the investigation of a missing child.

(2) When conducting a missing child investigation, to record all information relevant to the missing child and the circumstances surrounding the disappearance of the missing child on the appropriate law enforcement investigative report.

(3) To make an entry into the Missing Persons File through the Commonwealth Law Enforcement Assistance Network (CLEAN) in accord with Pennsylvania State Police policy and procedures immediately upon receipt of sufficient identification information on the missing child.

(3.1) To make an entry into the Unidentified Persons File through Commonwealth Law Enforcement Assistance Network (CLEAN) in accord with Pennsylvania State Police policy and procedures immediately upon:

(i) taking custody of an unidentified living child, such as an infant, or a physically or mentally disabled child; or

(ii) discovering an unidentified deceased child.

(4) To insure timely cancellation of any entry made pursuant to this section where the missing child has returned or is located.

**(a.1) Unidentified deceased children.**—Law enforcement agencies and coroners shall, with respect to unidentified deceased children, have the duty to make an entry into the Unidentified Deceased Person File through the Commonwealth Law Enforcement Assistance Network (CLEAN) in accordance with Pennsylvania State Police policy and procedures immediately upon observing or receiving any descriptive information on an unidentified deceased child.

**(b) Definition.**—As used in this section the term "child" means a person under 18 years of age.

1985, May 9, P.L. 31, No. 14, § 1, imd. effective. Amended 1990, Feb. 2, P.L. 6, No. 4, § 2, effective in 60 days; 1992, June 25, P.L. 315, No. 59, § 1, effective in 60 days.

### § 2909. Concealment of whereabouts of a child

**(a) Offense defined.**—A person who removes a child from the child's known place of residence with the intent to conceal the child's whereabouts from the child's parent or guardian, unless concealment is authorized by court order or is a reasonable response to domestic violence or child abuse, commits a felony of the third degree. For purposes of this subsection, the term "removes" includes personally removing the child from the child's known place of residence, causing the child to be removed from the child's known place of residence, preventing the child from returning or being returned to the child's known place of residence and, when the child's parent or guardian has a reasonable expectation that the person will return the child, failing to return the child to the child's known place of residence.

**(b) Application.**—A person may be convicted under subsection (a) if either of the following apply:

(1) The acts that initiated the concealment occurred in this Commonwealth.

(2) The offender or the parent or guardian from whom the child is being concealed resides in this Commonwealth.

1990, Feb. 2, P.L. 6, No. 4, § 3, effective in 60 days.

### § 2910. Luring a child into a motor vehicle or structure

**(a) Offense.**—Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits a misdemeanor of the first degree.

**(b) Affirmative defense.**—It shall be an affirmative defense to a prosecution under this section that the person lured or attempted to lure the child into the structure for a lawful purpose.

**(c) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Motor vehicle." Every self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway.

"Structure." A house, apartment building, shop, warehouse, barn, building, vessel, railroad car, cargo container, house car, trailer, trailer coach, camper, mine, floating home or other enclosed structure capable of holding a child, which is not open to the general public.

1990, Feb. 2, P.L. 6, No. 4, § 3, effective in 60 days. Amended 2005, Nov. 10, P.L. 330, No. 64, § 1, effective in 60 days [Jan. 9, 2006].

## CHAPTER 30

### TRAFFICKING OF PERSONS

Section
3001. Definitions.
3002. Trafficking of persons.
3003. Restitution for offenses.
3004. Forfeiture.

# PENNSYLVANIA STATE POLICE — INCIDENT REPORT

**Report Type:** ☒ INITIAL ☐ CONTINUATION ☐ SUPPLEMENTAL

**Date(s)/Day(s) of Incident:** 0?/??/06 FRI
**Time(s) of Incident:** 1600 HRS
**Incident No.:** F05-0891031

**Attachments:**
- ☐ Felony Crimes Against the Person
- ☐ Missing Person Checklist
- ☐ Victim/Witness Assistance Guide Receipt
- ☒ Statement Form(s)
- ☐ Rights Warning and Waiver
- ☐ Property Record
- ☐ Other — News Release

**Disp.:** ☐ Cleared by Arrest ☐ Unfounded ☐ Exceptionally Cleared — Date
A ☐ Death of Actor
B ☐ Prosecution Declined
C ☐ Extradition Denied
D ☐ Victim Refused to Cooperate
E ☐ Juvenile/No Custody
N ☐ Not Applicable
☐ Multiple Clear-up

**Juvenile:** ☐   **Domestic Violence:** ☐

1. **ORI/Station:** PAPSP5300/MANSFIELD
2. **Location:** 193 Whitneyville Rd.
3. **City/Twp/Boro:** Charleston Twp.
4. **County:** Tioga — Code 203 — Zone 42 — Code 58

5. **Victim No. 1**
   - **Name:** David (NMN) BUSH
   - **Address:** 193 Whitneyville Rd., Wellsboro PA 16901
   - **Employer Name:** Fiamingo Moving
   - **Employer Address:** 18610 RT 6, Mansfield PA 16933
   - **Home Telephone:** 570-724-2391
   - **Work Telephone:** 570-662-3171
   - 7. Race/Ethy: W/N
   - 8. Sex: M
   - 9. DOB: 08/13/66
   - 10. Age: 39
   - 11. Res. Stat.: R
   - 12. Rel. to Offender(s): XS
   - 15. Con. to Off.: 01
   - 16. Type Vict.: I
   - 17. Off. No. Rel.: 1

18. **Offense:**
   - ___ Simple Assault
   - ___ Burglary
   - ___ Escape
   - ___ Criminal Mischief
   - ___ Missing Person
   - ___ Aggravated Assault
   - ___ Terroristic Threats
   - ___ Harassment
   - ___ Arson by Related Offenses
   - ___ Theft by Unlawful Taking or Disposition
   - ___ Controlled Substance, Drug, Device and Cosmetic Act
   - ___ Harassment by Communication or Address
   - 01 Other — **CONCEALMENT OF WHEREABOUTS OF A CHILD**

| 19. No. | 20. Statute | 21. Section No. | 22. UCR | 23. Hate/Bias | 24. Off. Used | 25. Off. Loc. | 26. Ety. Meth. | 27. Acty. Type | 28. WPN/FC |
|---|---|---|---|---|---|---|---|---|---|
| 01 | CC | 2909 | 260 | 88 | N | 25 | | | A |

29. **Vehicle:** ☐ Stolen ☐ Recovered ☐ Suspect ☐ Other

**Checklist:**
- Incident Promptly Reported by Victim: ☒ YES ☐ NO
- Can a Suspect Be Named: ☒ YES ☐ NO
- Evidence at Scene to Link Offender: ☒ YES ☐ NO
- Can a Vehicle Be Identified with Crime: ☐ YES ☒ NO
- Scene Processed for Latent Prints: ☐ YES ☒ NO
- Latent Prints Discovered: ☐ YES ☒ NO
- Scene Checked for Witnesses: ☒ YES ☐ NO

- Neighborhood/Area Canvass: ☐ YES ☒ NO
- Any Witnesses Located: ☐ YES ☒ NO
- Offender Information Available: ☐ YES ☒ NO
- Identifiable/Traceable Property: ☐ YES ☒ NO
- Unique/Unusual Method of Operation: ☐ YES ☒ NO
- Thought to Be Connected with Known Crime Pattern: ☐ YES ☒ NO
- Clean/Statistical Narcotics Message Sent: ☐ YES ☒ NO

51. **Date/Time Officer Arrived:** 02/23/2006 / 1131
52. **Date/Time Officer Departed:** 02/23/06 / 1300
53. **Date of Report:** 03/01/06
54. **Part One Only:** ☐
55. **LCE Notified:** ☐ YES ☒ NO
57. **Officer's Name/Signature:** Tpr. Eric J. WHISNER / (signed)
**Badge No.:** 10146
58. **Inves. Recm.:** ☒ Cont. ☐ Term.
59. ☒ Concur ☐ Nonconcur
56. **Supv. Init./Badge No.:** (signed)
60. **Page:** 01

DEPARTMENT HEADQUARTERS

1/7/10 Ignatz

## PENNSYLVANIA STATE POLICE
## INCIDENT REPORT – PART II

☒ INITIAL ☐ CONTINUATION ☐ SUPPLEMENTAL

DATE(S)/DAY(S) INCIDENT: 0_/__/06 FRI
TIME(S) OF INCIDENT: 1600 HRS
INCIDENT NO.: F05-0891031

**ATTACHMENTS:**
- ☐ FELONY CRIMES AGAINST THE PERSON
- ☐ MISSING PERSON CHECKLIST
- ☐ STATEMENT FORM(S)
- ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT
- ☐ RIGHTS WARNING AND WAIVER
- ☐ PROPERTY RECORD
- ☐ OTHER

**DISP.:**
- ☐ CLEARED BY ARREST
- ☐ UNFOUNDED
- ☐ EXCEPTIONALLY CLEARED – DATE
- A ☐ DEATH OF ACTOR
- D ☐ VICTIM REFUSED TO COOPERATE
- B ☐ PROSECUTION DECLINED
- E ☐ JUVENILE/NO CUSTODY
- C ☐ EXTRADITION DENIED
- N ☐ NOT APPLICABLE
- ☐ MULTIPLE CLEAR-UP

☐ JUVENILE ☐ DOMESTIC VIOLENCE

61. ORI/STATION: PAPSP5300/MANSFIELD
62. DATE OF REPORT: 03/01/06
63. OFFENSE: CONCEALMENT OF WHEREABOUTS OF A CHILD

64. ☐ ACCUSED ☒ SUSPECT
65. OFFENDER NO.: 1
NAME: Sarah Nicole MONSERRATE
66. ADDRESS: UNKNOWN
67. HOME TELEPHONE NO.: UNKNOWN
68. NICKNAMES/ALIAS: Sarah BUSH
69. HEIGHT: 5' 04"
70. WEIGHT: 125
71. HAIR: BRO
72. EYES: BRO
73. MARITAL STATUS: DIVORCED
74. RACE/ETHY.: W / H
75. SEX: F
76. DOB: 06/21/75
77. AGE: 30
78. RES. STAT.:
79. OFF. CODE: 260
80. TYPE ARREST: U
81. DATE OF ARREST:
82. ARMED WITH:
83. OTN/NON-TRAFFIC CIT. NO.:
84. FINGERPRINTED: ☐ YES ☐ NO
85. PHOTOGRAPHED: ☐ YES ☐ NO
86. DISP. UNDER 18:
87. VIC. NO. REL.: 01
88. SSN: 167604346
89. OLN: 23608551
90. BIRTHPLACE: UNKNOWN
91. EMPLOYER/SCHOOL: UNKNOWN
92. MISC. NO.:
STATE: PA

64. ☐ ACCUSED ☐ SUSPECT
65. OFFENDER NO.:
NAME:
66. ADDRESS:
67. HOME TELEPHONE NO.: –
68. NICKNAMES/ALIAS:
(blank fields)

93. NARRATIVE

LATITUDE: 41 46:04.40   LONGITUDE: -77 11:59.30

**SYNOPSIS:**

In the commission of this crime Sarah MONSERRATE did not notify the victim, David BUSH, to the whereabouts of their children after a Protection From Abuse Order granted on 07/06/04 to MONSERRATE against BUSH expired on 01/06/06. MONSERRATE had cut off all type of communications with BUSH and failed to leave any forwarding address for BUSH to attempt any contact with his children.

**INTERVIEWS:**

On 02/23/06 at approx 1130 hrs the victim, David BUSH, reported this incident at PSP Mansfield where he was interviewed. He related that his ex-wife had been granted a PFA order on alleged physical abuse claims prohibiting any contact with MONSERRATE, but protested that contact with the children was no prohibited on the PFA that he understood. BUSH related that he had obeyed the PFA by ending all contact with MONSERRATE and the children until after the PFA order had expired, at which time he attempted to locate MONSERRATE in order set up arrangements for visitations and/or any contact with his children. BUSH related that he employed investigative services and conducted his own search for his ex-wife and children finding that MONSERRATE had gone to great lengths to secure their location from him by changing her identity and social security number. BUSH further related that he had discovered that MONSERRATE was periodically moving her place of residence and may not be in the state of PA. BUSH related that there have been no attempts by MONSERRATE to restore any contact between the children and himself after the expiration of the PFA. For further details refer to the victim/witness statement for provided by David BUSH attached to this report.

**ADDITIONAL INFORMATION:**

A copy of this PFA order verifies that BUSH was not to have any type of contact with MONSERRATE or their three children while the order was in effect. The three children listed on the PFA order are all under the age of 18 years, Steph Cadence BUSH – DOB 08/27/97, Skyler Raine BUSH – DOB 11/01/00 and Shiloh Deseree BUSH – DOB 06/27/02.

(Continued)

94. OFFICER'S NAME/SIGNATURE: Tpr. Eric J. WHISNER /
BADGE NO.: 10146
95. INVES. RECM.: ☒ CONT. ☐ TERM.
96. SUPV. INIT/BADGE NO.:
97. ☒ CONCUR ☐ NONCONCUR
98. PAGE: 02

DEPARTMENT HEADQUARTERS