1                    STEVEN J. IGNATZ

2    2007 correspondence talks about a review of

3    records entered into the CLEAN NCIC by the

4    Newtown Township Police Department.

5                         Correct?

6         A.    Yes, sir.

7         Q.    Okay.  In the course of your

8    tenure in CLEAN, aside from the trip to

9    Newtown Township for the missing persons'

10   report, okay, were you aware there were any

11   other investigations being done in Newtown

12   about the accuracey of their records?

13        A.    No, sir.

14        Q.    Okay.  And you left when?

15                    MR. HENZES:  September of

16        '07.  He told you four times.

17                    MR. PURICELLI:  Do you

18        want to testify, Randy?

19                    MR. HENZES:  He told you

20        four times.

21                    MR. PURICELLI:  I have

22        reasons for my questions.

23                    THE WITNESS:  I left in

24        September of '07.

25

                Bucks County Court Reporters
                       215.348.1173

1                STEVEN J. IGNATZ

2    BY MR. PURICELLI:

3         Q.    Okay.

4         A.    My mother got sick and I was

5    transferred back home.

6         Q.    Okay.  Did you report to anybody,

7    including Fultz, that Newtown Township lacked

8    jurisdiction to have made any entry on

9    missing children?

10        A.    I don't remember reporting that

11   to anyone that wasn't aware of anything.  I

12   think maybe that came up in discussion with

13   Lieutenant Hile.

14        Q.    When you were talking to him

15   last?

16        A.    Yes.

17        Q.    Who brought that --

18        A.    Well, when I contacted him about

19   our findings in going down there May 17.

20        Q.    Who brought up the issue of

21   jurisdiction?

22        A.    I think I just told him that

23   we're not there to look at jurisdictional

24   areas.  We're there to solely look to see if

25   there's a report on file.

STEVEN J. IGNATZ

2      Q.      Fair enough.

3                      In order for you to make

4      that kind of comment would it be fair to

5      conclude that he had to have asked?

6      A.      He may have.  I don't recall.

7      Q.      Okay.

8      A.      I think that did come up, though.

9      Q.      All right.  So that in your

10     testimony in the arbitration you had

11     indicated that you made clear to Newtown

12     Township that you weren't interested in

13     whether the township had jurisdiction or not

14     to enter the -- only that they had a report.

15                     Correct?

16     A.      That's correct.

17     Q.      Okay.  So assuming Hile brought

18     it up would you have asked him why are you

19     asking that, whether they had jurisdiction or

20     not?

21     A.      I don't remember that being asked

22     by Lieutenant Hile.  I think I just told him

23     what I said earlier, that we're not there to

24     look at jurisdictional issues.  We're there

25     solely for the CLEAN.

1        STEVEN J. IGNATZ

2        Q.     Well, why would you talk about

3    something that was never a focus of your

4    investigation?

5        A.     I think it might just be

6    something that most people would be concerned

7    with or think about.

8        Q.     All right.  If you were never

9    considering jurisdiction you wouldn't even be

10   looking for it.

11                   Would you?

12       A.     It was obvious, you know, they

13   lacked jurisdiction, but I wasn't there for

14   that reason.

15       Q.     Well, you remember going through

16   your testimony at the arbitration about the

17   Municipal Police Officers Jurisdiction Act?

18       A.     Uh-huh.

19       Q.     Okay.  Since that have you done

20   any research to find out whether or not, in

21   fact, they did or didn't have jurisdiction?

22       A.     Well, I did at one time

23   afterwards look at the Municipal Police

24   Officers Jurisdiction Act and it's my belief

25   from reading that Act that a municipal police

Bucks County Court Reporters
215.348.1173

1       STEVEN J. IGNATZ

2    officer can effect an arrest for breeches of

3    the peace, felonies and misdemeanors if he's

4    out of his jurisdiction and on official

5    business, but things that are brought into

6    the jurisdiction don't apply to that Act.

7       Q.      While you were doing your

8    research did you happen to look up Title 18

9    of the Crimes Code Section 2908, missing

10   children?

11      A.      No.

12      Q.      Wouldn't that be a statute that

13   you would be familiar with in CLEAN?

14      A.      Probably not, sir.

15      Q.      Well, doesn't that statute

16   specifically discuss CLEAN?

17      A.      I believe it does.

18      Q.      Okay.  Doesn't it specifically

19   require any law enforcement officer to make

20   an entry in CLEAN of a missing child?

21      A.      I believe it does.

22      Q.      Okay.  Now, if the legislator

23   says any police officer can enter a missing

24   child in CLEAN and, in fact, uses the word

25   shall -- if you want to read the statute

STEVEN J. IGNATZ

2    you're free to.

3         A.     That's okay.

4         Q.     I have it in front of me.

5                       Wouldn't any police

6    officer in the Commonwealth of Pennsylvania

7    have jurisdiction to enter a missing child in

8    CLEAN?

9         A.     I believe so.

10        Q.     Okay.

11        A.     If the child is missing.

12        Q.     Now, if the legislator gave any

13   police officer jurisdiction to enter a

14   missing child in CLEAN, how do you conclude

15   Newtown Township Police, Commonwealth agency,

16   law enforcement agency didn't have

17   jurisdiction to enter the missing children in

18   CLEAN?

19        A.     I believe they can enter children

20   in CLEAN, but they can't investigate it.

21        Q.     Okay.  And did you come across in

22   your investigation --

23        A.     For missing children.  I'm sorry.

24        Q.     No.  Not a problem.

25                       Okay did you come across

Bucks County Court Reporters
215.348.1173

1                    STEVEN J. IGNATZ

2     any investigation report by the Newtown

3     Police Department on missing children?

4          A.    No.

5          Q.    All you had was a form showing a

6     lawful entry under the law of 2908 of an

7     entry of missing children.

8                         Correct?

9          A.    Well, I don't know the

10    circumstances of the children; if they were

11    actually missing.

12         Q.    Did you bother to check?

13         A.    No.  I was relying on information

14    provided to me.

15         Q.    From Fultz.

16         A.    Yes, sir.

17         Q.    And was that oral or written?

18         A.    Oral.

19         Q.    Okay.  Did you look to see if his

20    information was reliable?

21         A.    And, actually, that was in his

22    report, also.  His CLEAN investigation

23    report.

24         Q.    His report was done after the

25    investigation.

Bucks County Court Reporters
215.348.1173

1                    STEVEN J. IGNATZ

2          A.        After the fact.  Yes, sir.

3          Q.        Uh-huh.

4                              Isn't it common practice

5    to keep a running report?

6          A.        I'm not sure what you mean by

7    running report.

8          Q.        Let's say, for example, today you

9    received a complaint of missing children, for

10   example.  You would say today I received a

11   complaint about missing children.

12                             Correct?

13         A.        Okay.

14         Q.        Okay.  And you would start your

15   report.

16                             Correct?

17         A.        Yes.

18         Q.        Okay.  And let's say two months

19   from now you finally went out and looked for

20   the missing children.  You would then two

21   months from now make an entry in that report

22   you already started.

23                             Correct?

24         A.        That's how I would do it, sir.

25         Q.        Okay.  So let's assume two months

1                     STEVEN J. IGNATZ

2    after you received the information, well,

3    possible location where these maybe missing

4    children would be, you decide to contact the

5    police department, say, for example

6    Albuquerque, New Mexico.  So you're four

7    months into the investigation.  You would

8    make an entry then.

9                    Wouldn't you?

10        A.     I probably would.

11        Q.     Okay.  And is that the way the

12   State Police taught you to do report writing?

13        A.     I believe so.

14        Q.     Okay.  Is there anything you can

15   tell me that the State Police taught you not

16   to do it that way?

17        A.     I think it's good practice to

18   document things as they come up so you have

19   access to it.

20        Q.     So you remember exactly who said

21   what.

22                    Right?

23        A.     Yes, sir.

24        Q.     You're not relying necessarily

25   completely on your memory.

1                 STEVEN J. IGNATZ

2                      Correct?

3       A.      Yes, sir.

4       Q.      And we can agree that police

5   officers' memories are just as fallible as

6   others in certain areas?

7       A.      Yes, sir.

8       Q.      Okay.  Now, Fultz's report wasn't

9   started when he received the assignment.

10                     Was it?

11      A.      I don't know that.

12      Q.      You don't know.

13                     Well, you were the

14  supervisor.

15                     Did you check?

16      A.      I wasn't there when he started

17  the assignment.

18      Q.      How do you know that his report

19  that he submitted to you wasn't typed after

20  your visit to Newtown Township?

21      A.      It may well have been, sir.

22      Q.      When I say "typed," I mean in its

23  totality.

24      A.      It may have been.

25      Q.      So he could have, isn't it true,

STEVEN J. IGNATZ

1

2    excluded information he wanted to exclude in

3    that report?

4        A.    If he chose to, I suppose so.

5        Q.    Okay.  And you as the supervisor

6    having gone through supervisory schooling

7    knew you had liability based on what he did

8    or didn't do.

9                     Isn't that true?

10       A.    Yes, sir.

11       Q.    Okay.  So why not didn't you

12   ensure that Trooper Fultz's report was

13   thorough, accurate and done in accordance

14   with the policies and the practices of the

15   Pennsylvania State Police?

16       A.    From my review it was done

17   thoroughly and accurately and in accordance

18   with those policies.

19       Q.    Well, we can agree that you

20   didn't know when he started that report

21   writing.

22                     Correct?

23       A.    That's correct.

24       Q.    And we can agree that you don't

25   even know if there's proper form that even

Bucks County Court Reporters
215.348.1173

STEVEN J. IGNATZ

2    permitted him to even start his

3    investigation.

4                    Isn't that correct?

5        A.      No.  I don't -- I don't think

6    that is correct.  He received --

7        Q.      Before he came to you -- not to

8    keep repeating ourself -- you saw no

9    document.

10                   Correct?

11       A.      That's correct.

12                   MR. HENZES:  Objection.

13   Asked and answered.  You gave me the

14   objection.

15                   Can we ask something

16   that's beyond you disagreeing with his

17   answers?

18                   MR. PURICELLI:  Last time

19   I checked intentional and reckless

20   conduct was a necessary element I had to

21   prove.

22                   MR. HENZES:  That's

23   assuming he did anything to your client,

24   but that's another story.

25                   Go ahead.