1                       STEVEN J. IGNATZ

2                       Was there?

3        A.     Not that I know of.

4        Q.     Okay.  How many -- of all the
5   years that you've been doing law enforcement
6   including with the State Police have you gone
7   and started investigations on a guess of
8   wrongdoing by a police officer without any
9   facts to back it up?

10       A.     Probably none without any facts.

11       Q.     Okay.  What fact would you
12  want -- fact, not guess, not assumption, not
13  premonition, what fact as a State Trooper
14  would you want to allege that somebody does
15  or doesn't have a document?

16       A.     I would just take a totality of
17  the circumstances into account and see if it
18  was --

19       Q.     Okay.

20       A.     -- plausible that there would be
21  a report.  And in this particular case I
22  didn't think there would be a report.

23       Q.     Okay.  Would you accuse somebody
24  and start an inquiry of wrongdoing unless you
25  knew there was some wrongdoing?

2                    Let me help you out a
3     little bit because I don't want you to talk
4     in a vacuum.
5          A.    Okay.
6          Q.    If your station was investigating
7     a missing child case such as this, the one
8     we're looking at, however you want to
9     classify it, and someone came in and told you
10    the children were put in NCIC and you knew
11    you hadn't put them in NCIC, okay, would that
12    be sufficient information for you to accuse
13    somebody of not having a report before they
14    put the NCIC entry in?
15         A.    I think it would -- no.  Just
16    with that information?  No.
17         Q.    Okay.
18         A.    But can I continue?
19         Q.    Sure.  Go right ahead.  I'm sure
20    Randy would like you to.
21         A.    I think that would open the door
22    to look to make sure.
23         Q.    Okay.  So even if you would ask
24    for it to be looked at, certainly wouldn't
25    have any knowledge that there had been a

1                    STEVEN J. IGNATZ

2    violation.

3                        Would you?

4         A.    No.

5         Q.    Okay.  You couldn't go put an

6    Affidavit out and accuse somebody of that.

7                        Could you?

8         A.    I wouldn't.

9         Q.    Okay.

10                  MR. PURICELLI:  I have

11   nothing further.

12                  MR. HENZES:  I have

13   nothing.

14                        - - -

15                  (Witness excused.)

16                        - - -

17                  (At 12:26 p.m.,

18   proceedings were concluded.)

19                        - - -

20

21

22

23

24

25

1

2                      C E R T I F I C A T E

3

4                 I, BARBARA C. STALHEIM, being a

5    Certified Shorthand Reporter in Pennsylvania, do

6    hereby certify that the foregoing oral testimony of

7    STEVEN J. IGNATZ was taken stenographically by me on

8    Thursday, January 7, 2010, after the said witness was

9    duly sworn or affirmed prior to the commencement of

10   his testimony; and that this deposition transcript is

11   a true and correct transcript of the same, fully

12   transcribed under my direction, to the best of my

13   ability and skill.

14                 I further certify that I am not

15   a relative, employee or attorney of any of the parties

16   in this action; that I am not a relative or employee

17   of any attorney in this action; and that I am not

18   financially interested in the event of this action.

19

20

21

22

23
                           BARBARA C. STALHEIM
24                         Certified Shorthand Reporter

25

                      Bucks County Court Reporters
                             215.348.1173