### Page 173

```
 1  definition of what a limited investigation --
 2          MR. PURICELLI: Which is --
 3          THE WITNESS: Are you letting me finish or
 4  are you interrupting me this time? Counselor, a limited
 5  investigation, the definition for the investigation
 6  which is reported by department correspondence. That is
 7  how are you documenting an investigation, the
 8  definition.
 9          It has a to from, completed by Lieutenant
10  Hile which defines a limited investigation. It is not
11  the complaint, how the complaint is received from
12  anybody.
13  BY MR. PURICELLI:
14      Q. If that is true then, then that report, a to from
15  memo will clearly establish at least one of the
16  following applies; is that correct?
17      A. Yes.
18      Q. The alleged misconduct failed to constitute a
19  violation of the department rules or regulations?
20      A. Uh-huh.
21      Q. Okay. Does Hile say that?
22      A. Yes.
23      Q. Okay. There is absolutely no violation that he
24  could find?
25      A. Correct.
```

### Page 174

```
 1      Q. The complaint was mistaken and the misconduct
 2  alleged was not attributed to personnel. Was
 3  Christopher Bush's complaint that Tripp did not put the
 4  children into the NCIC mistaken?
 5      A. Correct.
 6      Q. That was mistaken? He did do it?
 7      A. No. Tripp wasn't responsible.
 8      Q. It's the allegation. Not whether it was
 9  factually true?
10      A. Well, Counselor, all this is arguable. You go
11  down to the next paragraph. You go to the next section
12  about the discussion between the complainant, the
13  Captain and the Director of IAD and the mitigating
14  factors, the totality of the circumstances, leads to a
15  limited investigation.
16      Q. Wouldn't it be true that we don't talk about
17  anything about mitigation until we get where it
18  describes limitation, F?
19      A. Right.
20      Q. If we look at the definition, it didn't say
21  anything about mitigation?
22      A. Page 33 says, in addition, in addition, Counsel,
23  a limited investigation may be conducted when the troop
24  commander and the Director of IAD concur a full
25  investigation is not warranted due to mitigating
```

### Page 175

```
 1  circumstances. In addition, sir.
 2      Q. A while back, we talked about the word
 3  misconduct. In fact, it's defined in this regulation
 4  under N, doesn't it?
 5      A. Yes.
 6      Q. Okay. You said you found no misconduct because
 7  that would have required a full investigation?
 8      A. Correct.
 9      Q. You were quite specific to say that misconduct
10  had to be attributed to the target, the troop or member
11  of the State Police. Is that what you said?
12      A. In relation to whether or not a limited or full
13  was being done, yes.
14      Q. And misconduct is defined as conduct which could
15  reasonably be expected to destroy public respect and
16  confidence in the Pennsylvania State Police, correct?
17      A. Correct, yes.
18      Q. Okay. Now, a person complaining about their
19  children being missing, entry into the NCIC that the
20  children could be located, you don't believe the public
21  might, could?
22          MR. HENZES: Could? Is there more to this
23  question?
24          MR. PURICELLI: Could cause the public to
25  not have respect or confidence in the State Police?
```

### Page 176

```
 1          THE WITNESS: No.
 2  BY MR. PURICELLI:
 3      Q. You don't believe troopers deciding if they do
 4  locate the whereabouts of the children, they're not
 5  going to tell the father where the children were might
 6  not cause the public, that the state police in a neutral
 7  setting, find out?
 8      A. I think they would have stood and applauded the
 9  decision in this case.
10      Q. You think so?
11      A. Yes, I would.
12          MR. HENZES: Am I missing something? Where
13  anywhere did any of the defendants know where the
14  children were? You keep saying they. We knew where
15  they were and didn't tell them.
16          MR. PURICELLI: Like, you have to spend
17  fourteen hours and twenty minutes reading all this stuff
18  before a deposition. You'd be surprised what you find
19  in the documents.
20          MR. HENZES: I'm not surprised what you'd
21  find.
22          MR. PURICELLI: He knows exactly what is
23  written in that report.
24          THE WITNESS: I do.
25  BY MR. PURICELLI:
```

## Page 177

1  Q. They in fact said that in the report?
2  A. There is somewhere in there that they wouldn't
3  tell the father if they did find them. I completely
4  concur in that decision.
5  Q. At least you know I'm reading the record.
6      Why would the State Police take a position about
7  custody things that belong in civil court?
8  A. Well, I think you look at the totality of the
9  circumstances in the case and the domestic violence
10 involving David Bush and his wife leads to that
11 conclusion.
12 Q. So, a person alleged to have been involved in a
13 domestic violation has no rights according to the State
14 Police just because they say so?
15 A. I don't think we ever said the person doesn't
16 have any rights, Counselor.
17 Q. They don't have the right to have the State
18 Police look for their children if the wife absconded
19 them illegally?
20 A. In face, we did look for the children. It wasn't
21 to their satisfaction but we did look.
22 Q. Does the law require a face-to-face when the
23 children had been found to determine whether or not
24 their first belief was wrong?
25 A. No, sir. It didn't.

## Page 178

1  Q. Okay. Isn't it true under this regulation, they
2  don't define what "mitigating circumstances" would be?
3  A. I don't know if they do or not.
4  Q. Where we talk about a limited investigation being
5  converted to a full investigation, we'll find that
6  language in F3, correct? Limited investigations must be
7  converted into a full investigation if any element of
8  misconduct is determined?
9  A. Yes.
10 Q. Any element, correct?
11 A. Uh-huh.
12 Q. What are those elements?
13 A. Let's go back to the definition of misconduct.
14 Shall we?
15 Q. Anything that they would do that would cause the
16 public to have destroyed confidence?
17 A. A violation of the Pennsylvania State Police Code
18 of Conduct or any conduct which would be reasonably
19 expected to destroy public respect and confidence of the
20 Pennsylvania State Police.
21 Q. And based on the word reasonably be expected,
22 what guidance did you operate off to determine whether
23 or not the scenario, the circumstances were, wouldn't
24 cause that effect?
25 A. I would -- the best I can answer that is my

## Page 179

1  training and experience.
2  Q. Which you never came across something like that
3  before. Did you?
4  A. I've never come across something like this
5  before. No, sir.
6  Q. We can eliminate experience, right?
7  A. No. I don't think you can eliminate experience
8  at all. It's experience with -- I don't think you
9  eliminate that. Sorry.
10 Q. All right. If we go to page 4, reviewing
11 officer, Q?
12 A. I'm sorry?
13 Q. That is --
14     MR. HENZES: Still under the definition
15 section.
16 BY MR. PURICELLI:
17 Q. You weren't a reviewing officer. Were you?
18 A. No.
19 Q. You were the adjudicator, correct?
20 A. Correct.
21 Q. But you're the one, though, that had assigned the
22 reviewing officer. Is that true?
23 A. No.
24 Q. Okay. Who is the reviewing officer?
25 A. Major Rice.

## Page 180

1      MR. HENZES: Read the definition it will
2  tell.
3      MR. PURICELLI: Serious bodily injury?
4      MR. HENZES: No, reviewing officer in most
5  cases, the individual, the area commander which he
6  referred to as the Major or any other individual who
7  serves as the supervisor of the adjudicating officer.
8  BY MR. PURICELLI:
9  Q. Under the complaint categories, there's a
10 dissatisfied with the performance of duties. Do you see
11 that, F?
12     MR. HENZES: 2505F, under that section now.
13     MR. PURICELLI: Uh-huh.
14 BY MR. PURICELLI:
15 Q. These would be reasons to do an investigation,
16 correct?
17 A. Yes.
18 Q. Okay.
19 A. Complaint investigation categories.
20 Q. So, Christopher Bush's claim was that Tripp
21 didn't put the children into NCIC, correct?
22 A. That is one of the complaints, yes.
23 Q. And he was claiming that Bush was required to do
24 that under the law, correct?
25     MR. HENZES: No. Tripp.

## Page 181

```
 1  BY MR. PURICELLI:
 2    Q.  Tripp was required to do that by law, correct?
 3    A.  Yes.
 4    Q.  So, that would fall under F, that complaint?
 5    A.  Can we see that 101 again?
 6    Q.  Absolutely.
 7        MR. HENZES:  Second page.
 8        THE WITNESS:  That was the category
 9  available to be used, yes.
10  BY MR. PURICELLI:
11    Q.  And under the Statute that the child was put in
12  danger or believed to be put in danger, there is
13  supposed to be an investigation and the children put
14  into missing children data; is that correct?
15    A.  No.  In this particular Statute, the section
16  doesn't require children.  There is no reference to the
17  children put in the NCIC, concealing the whereabouts of
18  a child.  The wife has a defense, fear of domestic
19  violence.
20    Q.  How do you know that the wife has that defense or
21  not if you didn't talk to the wife?
22    A.  You've got a stack of domestic violations history
23  between those two individuals which you're aware, is
24  quite thick.
25    Q.  I don't agree that there is a stack.  In fact,
```

## Page 182

```
 1  there's only one, isn't there?
 2    A.  I'll let the triers of fact determine what
 3  constitutes a stack and what doesn't.
 4    Q.  What do you constitute a stack?
 5    A.  It is a long history of what ended up between
 6  those two.
 7    Q.  How many of this long history was actually proven
 8  in a court of law is true?
 9    A.  I'll let you argue that with the triers of law.
10    Q.  I'm asking you now.
11        MR. HENZES:  He answered you.  He said he
12  doesn't know.
13        THE WITNESS:  There you go.
14  BY MR. PURICELLI:
15    Q.  How many have you seen proven in a court of law?
16    A.  I believe the PFA violation and harassment
17  charge, if I recall correctly and what may have been in
18  addition to that.
19    Q.  There was an entry by consent to the PFA or the
20  order?
21    A.  Details of which I don't recall.
22    Q.  You're saying there were violations.  If I told
23  you there was only one PFA and one PFA violation, do you
24  have any reason to say there have been any other
25  adjudications?
```

## Page 183

```
 1    A.  No, comfortable with a long history of domestic
 2  violence between the two.
 3    Q.  Proven domestic or allegations of?
 4    A.  I think you can throw a combination there of, a
 5  long history.
 6        MR. HENZES:  Proven.  He admitted to it.  He
 7  admitted to the entry of the PFA.
 8        MR. PURICELLI:  We call it a consent order.
 9        THE WITNESS:  Call it what you like.
10  BY MR. PURICELLI:
11    Q.  I thought you had training in PFA.  We did this
12  long ago.  Do you know the difference between a consent
13  order and an adjudication order?
14    A.  No, sir.  I don't know that I know the difference
15  between the two.
16    Q.  That may explain your comment then?
17    A.  What comment was that?
18    Q.  Why you believe what you believe.
19    A.  Oh, okay.
20    Q.  Now, also under the complaint categories, there's
21  a category G, allegations that are not easily
22  categorized or identified as falling into any specific
23  category, correct?
24    A.  Yes.
25    Q.  What did Christopher Bush's complaint fall under?
```

## Page 184

```
 1    A.  I think he put it under information only.
 2    Q.  Christopher Bush didn't fill out this 101, did
 3  he?
 4        MR. HENZES:  Are you asking him after
 5  reading it what one category he thinks it's under?
 6        MR. PURICELLI:  Yeah.  He referred to the
 7  document.
 8        MR. HENZES:  You're asking him what does
 9  he --
10        MR. PURICELLI:  Randy, follow with the
11  questions.
12        MR. HENZES:  Brian, the problem is when he
13  gives you an answer, then you question what type of
14  answer he is giving you, instead of asking the specific
15  question which is, you were referring to the complaint
16  form which started this dialogue.  And he said it
17  doesn't make --
18        MR. PURICELLI:  We'll start over, Randy.
19  BY MR. PURICELLI:
20    Q.  Major?
21    A.  Yes.
22    Q.  What category did Christopher Bush's complaint
23  fall under using the criteria we just went over?
24    A.  What ID chose to use was information only.
25        MR. HENZES:  That's not the same question I
```

185

1 told you to ask.
2    MR. PURICELLI: You ask your question,
3 Randy. I have my own theory how I do a deposition.
4    MR. HENZES: You said what did. You used
5 that word did. That's the problem. That's why he said
6 they referred it as -- because he didn't fill this out.
7 That is your problem. They, they being what PR did.
8 That is why he says information only and then you all of
9 a sudden start running on a high horse.
10    MR. PURICELLI: Probably why he scolded you.
11 BY MR. PURICELLI:
12    Q. You have an opinion of what the categories are.
13 And you're trying to tell me the trooper that took this
14 placed in the category. Is that what you're saying?
15    A. The trooper that took this placed in the
16 category, yes.
17    Q. Did you as the adjudicator which there is no such
18 thing as information only in those categories of the
19 complaint, is there?
20    A. There is none listed.
21    Q. Thank you. Now, as an adjudicator, the major
22 categories we just went over, what did they fall under?
23    A. He was obviously dissatisfied with the
24 performance of the investigator.
25    Q. Could it have fallen under F. Okay? Right? Are

186

1 we in agreement? You can choose F?
2    A. You can throw in verbal abuse. He didn't like
3 being laughed at. Sergeant Tripp laughed, improper
4 conduct, duty.
5    Q. You could a find a number of them in there?
6    A. You probably could, yes.
7    Q. What did Sergeant Tripp say about that phone
8 call?
9    A. Where Christopher Bush complained he was laughing
10 at him. I think he said he laughed. Sergeant Tripp
11 laughed.
12    Q. Okay. Is there -- is there any report from Tripp
13 of an interview by Hile in the AR investigation, in a
14 limited investigation?
15    A. Is there a -- I'm sorry.
16    Q. Is there a report?
17    A. From Hile.
18    Q. From Hile, of an interview Hile had with Tripp
19 about this complaint?
20    A. I don't believe so.
21    Q. Is there a written statement from Tripp in this
22 investigation that you delegated how to do, explaining
23 that phone call?
24    A. I don't recall seeing a written explanation of
25 that.

187

1    Q. If there was, it would be required under the
2 regulations to be noted in your adjudication. Wouldn't
3 it? In your adjudication that you reviewed. Wouldn't
4 it?
5    A. I don't know that it would be required to be
6 noted in my adjudication, no.
7    Q. We'll keep going through the regulations.
8    A. Okay.
9    Q. 2508, page 7, personnel shall ensure that the
10 confidentiality of all complaints is maintained in
11 accordance with existing regulations. Did I read that
12 correctly?
13    A. Yes.
14    Q. What are the regulations about confidentiality?
15    A. You just read it.
16    Q. It says in accordance with existing regulations.
17 Directs you to another regulation, doesn't it?
18    A. Yes.
19    Q. What is that regulation?
20    A. I don't recall.
21    -----
22    (Whereupon Exhibit No. Hill 6, AR4-25,
23 Internal Investigations, was marked for identification.)
24    -----
25 BY MR. PURICELLI:

188

1    Q. Now, on 6, page 10, says duty of adjudicating
2 officer which we find in D, page 9, correct? This is
3 what the adjudicator is supposed to do, right?
4    A. Yes.
5    Q. If you turn to 6, it says notify the complainant
6 of the results of the investigation. You did that,
7 correct?
8    A. I did.
9    Q. Okay. Either verbally or written. You did that
10 how? In writing?
11    A. Yes, I did.
12    Q. Notify public officials who were interviewed such
13 as district attorneys, judges, etcetera, either verbally
14 or in writing of the result of the investigation if it
15 is unfounded. This investigation was an unfounded one,
16 correct?
17    A. Uh-huh.
18    Q. Did you contact any district attorney or judge?
19    A. No. I did not.
20    Q. Were any of them consulted by Hile or anybody
21 else in the course of that investigation?
22    A. They were not. To my knowledge, Hile did not
23 interview the district attorney in conjunction with this
24 investigation.
25    Q. So, there should be no mention by Hile of ever

## Page 189

1 talking to the district attorney?
2   A.  That he did?
3   Q.  Yeah.
    A.  I don't recall if he did.
5   Q.  Okay. If we go to 2510 C-1.
6   A.  Page number, Counsel?
7   Q.  Twenty-one. Says here notifying involved
8 individuals. That would be the complainant and the
9 person who is the subject of the complaint as well as
10 the person delegated to assign an investigation. Would
11 that been included in all of that?
12   A.  I think C-1, a notification.
13   Q.  Shall notify the complainant that their complaint
14 has been received, correct?
15   A.  Yes.
16   Q.  In this case, we have a letter? That would be
17 that notification; is that correct?
18   A.  I would assume that complies with that, yeah.
19   Q.  Okay. And then that says on 2, the assigned
20 investigator in this case was Hile, correct?
21   A.  Uh-huh.
22   Q.  Shall officially notify affected personnel of a
23 pending investigation unless circumstances dictate
24 otherwise. Did I read that correct?
25   A.  Uh-huh.

## Page 190

1   Q.  The notification of the inquiry shall be issued
2 to the suspect and served as the official notification.
3 And it gives us an appendix?
4   A.  Subject, not suspect.
5   Q.  Okay. It identifies the appendage. Does it not?
6   A.  It does.
7   Q.  If we look at page 41, we'll see it looks like
8 that, right?
9   A.  Yes.
10   Q.  Is there such that -- is there that document in
11 your packet that you sent out on your adjudication?
12   A.  No. There is not. A limited investigation
13 doesn't require it.
14   Q.  It says unless circumstances indicate otherwise,
15 doesn't it?
16   A.  Yeah.
17   Q.  So, you're saying, if we go back to the general
18 limited investigation, you don't have to give that
19 notification?
20   A.  I think it says that, yes. It says may.
21   Q.  The part you're talking about, correspondence
22 earlier, we'll find in 4, right?
23   A.  I'm sorry.
24   Q.  On page 23, the general investigation report
25 shall be used to report full investigation.

## Page 191

1 Correspondence shall be used to report limited?
2   A.  Correct.
3   Q.  That's the 501, 201 thing, correct?
4   A.  The correspondence is a 501 and a 201. The GIA,
5 a different number.
6   Q.  We should find from Hile, the 201, known as now
7 but it was 501 back?
8   A.  Correct.
9   Q.  And we'll find such a document?
10   A.  Yeah. It's --
11   Q.  Seven, on page 24, the subject of an
12 investigation shall be personally interviewed?
13   A.  Yes.
14   Q.  It doesn't say an exception if it's limited or
15 general, correct?
16   A.  That section didn't say that, yes.
17   Q.  Okay. How do you know Tripp was interviewed,
18 personally interviewed?
19   A.  A limited investigation allows for the collection
20 of documents and reports and may or may not include an
21 interview that is an exception in a limited
22 investigation.
23   Q.  I've read the whole section, page 33, 34, limited
24 investigation. Unless you can point out, it doesn't say
25 anything by the way, you don't have to interview the

## Page 192

1 person that is the subject of the investigation?
2   A.  2, F2A, 1 through 4.
3   Q.  A limited investigation should include a synopsis
4 of the allegations. Enclosures may include?
5   A.  Correct.
6   Q.  Okay. The enclosures may include. It doesn't
7 say shall include. It doesn't say anything about
8 excluding the interview, does it?
9   A.  It does say may include.
10   Q.  Just the attachments that go to the
11 correspondence. Is that correct, Major?
12   A.  No, includes notification if inquiry to issues
13 that involve personnel. It doesn't have to include it.
14 Any other documents which are relevant to the
15 investigation.
16   Q.  Does it say anywhere I can find that the
17 requirement that the subject of the investigation shall
18 be personally interviewed that doesn't apply?
19   A.  Yes.
20   Q.  Where?
21   A.  In the limited investigation category where it
22 describes the contents of that.
23   Q.  Well --
24       MR. HENZES: He is asking, is there anything
25 in the document that says under a limited investigation.

### Page 193

1  And he is -- actually, what he is looking for is
2  specific words that say under a limited investigation,
3  the person --
4            THE WITNESS: Those specific words are not
5  used in that section.
6  BY MR. PURICELLI:
7      Q. How are you going to know whether he did or
8  didn't laugh at Christopher Bush?
9      A. I think he admitted somewhere along the line that
10 he laughed.
11     Q. Where is that found in any of the enclosures you
12 looked at?
13     A. I don't know that it is. I think I heard it at
14 some point in the testimony of the arbitration.
15     Q. That was after your adjudication, wasn't it?
16     A. Yeah.
17     Q. It says that the investigator shall not express
18 assumption, personal opinions or conclusions in a
19 general investigation report, correct? And that is
20 found on page 28, by the way?
21     A. Okay.
22     Q. Would that be saying for a limited investigation
23 although it's done by correspondence?
24     A. I think so. It also includes it may include an
25 assessment as to why an investigation should be handled

### Page 194

1  on a limited basis.
2      Q. This is just called an internal investigation,
3  correct?
4      A. Sorry?
5      Q. There is another investigation of policy for
6  investigations done by the State Police that aren't to
7  concern an employee. Is there?
8      A. Yes.
9      Q. And you're saying in that policy, I'll find that
10 they can in fact, express assumptions, personal opinions
11 and conclusions?
12     A. A conclusion is part of the GI, the heading on
13 one.
14     Q. What about assumptions and personal opinions?
15     A. I don't know that an assumptions and personal
16 opinions are included in that document.
17     Q. Now, 1625.
18     A. Page?
19     Q. Page 29, paragraph 16 reads the investigation
20 shall be completed and all reports shall be received by
21 the director or designee within forty days after
22 assignment unless an extension is granted by a director
23 upon request by the investigator?
24     A. Uh-huh.
25     Q. Commanding director. Did I read that sentence

### Page 195

1  correctly?
2      A. You did.
3      Q. All right. This investigation started somewhere
4  around February?
5      A. Correct.
6      Q. You made adjudication in August, correct?
7      A. Correct.
8      Q. We're going to get to a document that they don't
9  even start looking for, the report until June, Wizner's
10 report. Do you remember seeing all those documents?
11     A. No. I remember seeing all the documents.
12     Q. We can agree that an investigation wasn't
13 completed within forty days of the assignment?
14     A. I agree that's correct.
15     Q. Was there a request for an extension of time?
16     A. I don't recall if there was or not.
17     Q. Would that have been a violation of this
18 regulation?
19     A. No.
20     Q. Why not?
21     A. This is a limited investigation. I have a full.
22 I think there's a difference between the two.
23     Q. Can you point me to anywhere that says this
24 provision doesn't apply?
25     A. I don't know that I can.

### Page 196

1      Q. We only have this document to work with?
2      A. Correct.
3      Q. There's nothing else you can point me to, to look
4  for?
5      A. I personally cannot, no.
6      Q. We can agree then if I read this from cover to
7  cover, it didn't say a forty day period?
8      A. I wouldn't agree to that, sir. No, sir.
9      Q. Can you tell me?
10     A. I cannot lead to where it is or where it may be
11 or if there is in fact some separation here.
12     Q. The note, following, on 30, says when an
13 investigation. It doesn't say limited or general. It
14 says when an investigation exceeds ninety days, the
15 investigator shall provide periodic status reports
16 either verbally or in writing to the complainant?
17     A. This is all about general investigation reports.
18 You go back a few pages, following procedures followed
19 by individuals conducting investigations.
20     Q. Personnel investigations?
21     A. Right. And then paragraph 4, the general
22 investigation report shall be used to report a full
23 investigation. Correspondence shall be used to report
24 limited investigations.
25     Q. That is just to report, isn't it?